**UNITED STATES of America**

v.

**Benjamin T. THORNTON, Prince George's County, Maryland, Appellant.**

**No. 81–1304.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1981.

Decided Feb. 16, 1982.

As Amended Feb. 24, 1982.

Steven M. Gilbert, Associate County Atty., Upper Marlboro, Md., with whom Robert B. Ostrom, County Atty., and Steven G. Chappelle, Associate County Atty., Prince George's County, Upper Marlboro, Md., were on brief for appellant.

Sylvia Royce, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Joseph F. McSorley and A. Patricia Frohman, Asst. U. S. Attys., Washington, D.C., were on brief for appellee.

Before MacKINNON, WALD and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge, MacKINNON.

MacKINNON, Circuit Judge:

Prince George's County (the "County") in contiguous Maryland appeals from a default judgment entered against it by the United States in the United States District Court of the District of Columbia ("District Court"). The County's Director of Finance (Brown) in his official capacity came into possession of $15,439.24 as a result of a police seizure in a raid upon Benjamin T. Thornton's residence in Prince George's County in connection with a State of Maryland gambling investigation. Following the seizure no charges against Thornton have survived, but the seized money, except $2,900 returned to Thornton, has nevertheless been retained by the County's Director of Finance.

Thornton owes the United States $10,000 in fines adjudged in the District Court for the District of Columbia in connection with an earlier gambling conviction in that court. In an effort to collect the fine imposed, the United States duly filed the $10,000 judgment for record in the Office of Recorder of Deeds for the Government of the District of Columbia (App. 4). Thereafter the United States caused a Writ of Execution to issue commanding the United States Marshal to recover said sum from the authorities in Prince George's County. On October 21, 1980 the Marshal served a "Writ of Attachment on Judgment" and Interrogatories on "William R. Brown, Jr., Director of Finance [Prince George's County] . . . Garnishee." On November 10, 1980 [1] the County Attorney's Office of Prince George's County, Treasury Division, admitted by answer filed to holding $15,439.24 of the credits of Benjamin T. Thornton (App. 9). The United States thereafter moved for Judgment of Condemnation against $10,000 of the credits belonging to Thornton. When the County failed to make timely response to this motion the District Court on February 6, 1981, entered a Judgment of Condemnation and on February 10, 1981, the County filed a belated Motion for Relief from Judgment alleging that the United States District Court had no jurisdiction over the County. This request was denied by the District Court on March 2, 1981, (App. 26) and on March 11, 1981, the County appealed to this Court from the Court's Order to pay the "$10,000 to the United States" (Rec. 176) in satisfaction of Thornton's fine (Rec. 174). We affirm the Judgment and Order of the United States District Court.

## I

On December 2, 1976, Thornton was convicted in the United States District Court for the District of Columbia on three counts of violating the gambling laws of the United States and of the District of Columbia. On February 1, 1977, in addition to receiving prison sentences for two violations of 18 U.S.C. § 4205(b)(2), the federal offenses, he was also fined $5,000 on each of the two counts.[2] To date, Thornton has not paid those fines which total $10,000.

---

1. Or November 3, 1980. (App. 8.)

2. The Judgment entered in the criminal case (D.C.D.C. 75–438) recites that Benjamin T. Thornton on a plea of "not guilty" was "convicted as charged of the offense(s) of: . . .
   ILLEGAL GAMBLING BUSINESS
   (TITLE 18 UNITED STATES CODE, SECTION 1955)
   USING OR CAUSING USE OF AN INTERSTATE
   FACILITY IN AID OF RACKETEERING
   (TITLE 18 UNITED STATES CODE, SECTION 1952, 2)
   OPERATING A LOTTERY
   (TITLE 22 DISTRICT OF COLUMBIA CODE, SECTION 1501)
   *　　*　　*　　*　　*　　*

[T]he court adjudged the defendant guilty as charged and convicted and ordered that the defendant be committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of:
As to each of the counts 1 & 2: FIVE (5) YEARS; Pursuant to TITLE 18 UNITED STATES CODE, SECTION 4205(b)(2) defendant shall be eligible for parole at such time as the Board of Parole shall determine appropriate; Said sentences to run concurrently with one another and concurrently with sentence imposed on Count 3;
In addition to sentence imposed on Counts 1 & 2, Defendant is to pay a fine of FIVE THOUSAND ($5,000) DOLLARS on each of the Counts 1 & 2 with recommendation that the Board of Parole not consider parole until such time as the said fines are paid in full.

In January, 1980, Thornton was paroled and subsequently the Collections Unit of the United States Attorney's office requested Thornton to provide a schedule of payments for the fine. Thornton failed to produce a satisfactory schedule.

On July 22, 1980, the County police, acting on a tip from the FBI that Thornton was again engaged in gambling activities, arrested Thornton and seized $15,439 from his home. No charges were eventually pressed by Prince George's County or any Maryland authorities that were related to that search and seizure.[3] The $15,439,[4] however, remained in the custody of the County's Director of Finance and the United States, as above described, has sought to obtain $10,000 of the balance that remains in the custody of the Director of Finance to apply to the payment of the fine imposed by the Judgment in Thornton's criminal case.

## II

The manner of enforcing a judgment imposing a criminal fine in favor of the United States is provided for by 18 U.S.C. § 3565, Fed.R.Civ.P. 69(a), and 28 U.S.C. § 2413. These statutes and rule provide—
First, the United States Criminal Code:

> In all criminal cases in which judgment or sentence is rendered ... the fine ... may be enforced by execution against the

property of the defendant *in like manner as judgments in civil cases.* . . .
18 U.S.C. § 3565 (emphasis added).

Second, the Federal Code of Judicial Procedure:

> *A writ of execution on a judgment* obtained for the use of the United States in any court thereof shall be issued from and made *returnable to the court which rendered the judgment,* but *may be executed in any other State,* in any Territory, or in the District of Columbia.

28 U.S.C. § 2413.

Finally, the Federal Civil Rules provide:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless' the court directs otherwise. The procedure on execution, *in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held,* existing at the time the remedy is sought, except that any statute of the United States governs to the extent it is applicable.

Fed.R.Civ.P. 69(a) (emphasis added). Whenever the Federal Rules provide that the laws of the state in which the district court is held are made applicable, the law of the District of Columbia governs proceedings in the United States District Court for the District of Columbia.[5]

---

As to Count 3: ONE (1) YEAR to THREE (3) YEARS; Said sentence to run concurrently with sentences imposed on Counts 1 & 2. (A.6). No fine was imposed on the D.C. offense.

**3.** The record does not indicate precisely whether there was a formal dismissal of filed charges or a mere refusal to file charges following whatever initial showing may have been made to support the search and seizure of the house. In any event the result is the same—no criminal conviction or charges survived to justify the retention of the money by the County's Director of Finance against the claims of Thornton, or of the United States which pressed its judgment creditor's claim against Thornton's money.

**4.** As noted above $2,900 was returned to Thornton. See further discussion, *infra,* at p. 105.

**5.** Fed.R.Civ.P. 81(e) provides:

(e) Law Applicable. Whenever in these rules the law of the state in which the district court is held is made applicable, the law applied in the District of Columbia governs proceedings in the United States District Court for the District of Columbia. When the word "state" is used, it includes, if appropriate, the District of Columbia. When the term "statute of the United States" is used, it includes, so far as concerns proceedings in the United States District Court for the District of Columbia, any Act of Congress locally applicable to and in force in the District of Columbia. When the law of a state is referred to, the word "law" includes the statutes of that state and the state judicial decisions construing them.

Read together, the statutes and rules set forth above as applicable to the claim of the United States in this proceeding provide that the United States must secure a writ of execution to enforce the judgment from the United States District Court that rendered the judgment, must execute it "against the property of the defendant in like manner as judgments in [Federal] civil cases," and may proceed "in any other state" in accordance with the practice and procedure prescribed by the laws of the District of Columbia, *i.e.*, it may levy execution against Thornton's money in Maryland to enforce the judgment obtained in the United States District Court for the District of Columbia. *United States v. Lord Electric Co.*, 43 F.Supp. 12 (W.D.Pa.1942) followed this procedure.[6] The supplementary proceedings in aid of execution of the judgment contemplated by Fed.R.Civ.P. 69(a) authorize the United States to proceed under D.C.Code § 16–501, *et seq.*, entitled *"Attachment and Garnishment Generally"* and particularly *"Subchapter II. Attachment and Garnishment After Judgment in Aid of Execution."* D.C.Code § 16–541 to 556.[7]

**6.** *U. S. v. Lord Electric Co.*, 43 F.Supp. 12 (W.D.Pa.1942) interpreted the federal rule providing that the procedure on execution shall accord with the practice of the state in which the District Court is held and ruled that it was proper for the United States District Court for Pennsylvania to issue a "Writ of Attachment" upon a civil judgment in Pennsylvania to be levied upon bank deposits in the state of New York even though New York law did not authorize attachment execution upon bank deposits.

**7.** The D.C.Code provides for *"Attachment and Garnishment After Judgment in Aid of Execution"* as follows:

§ 16–541. Definition and applicability.

As used in this subchapter, "judgment" includes an unconditional decree for the payment of money, and this subchapter is applicable to such a decree.

§ 16–542. Issuance of attachment after judgment; costs.

An attachment may be used upon a judgment either before or after or at the same time with a fieri facias. . . .

§ 16–543. Revival of judgment unnecessary.

Attachment may be issued at any time during the life of the judgment, . . .

§ 16–544. Property subject to attachment.

An attachment may be levied upon the judgment debtor's goods, chattels, and credits.

§ 16–546. Attachments of credits.

An attachment shall be levied upon credits of the defendant, in the hands of a garnishee, by serving the garnishee with a copy of the writ of attachment and of the interrogatories accompanying the writ, and a notice that any property or credits of the defendant in his hands are seized by virtue of the attachment.

§ 16–547. Retention of property or credits by garnishee.

Where the property or credits attached or sought to be attached are held by the garnishee in the name of or for the account of a person other than the defendant, the garnishee shall retain the property or credits during the period pending determination by the court of the propriety of the attachment or the rightful owner of the property or credits. During that period the garnishee shall incur no liability whatsoever for the retention.

§ 16–551. Defending against the attachment; trial of issues.

A garnishee or stranger to the action who may make claim to the property attachment may file an answer defending against the attachment. The answer may be considered as raising an issue without any reply, and any issue of fact thereby made may be tried with a jury if any party so desires.

§ 16–552. Interrogatories to garnishee; oral examination.

(a) In any case in which a writ of attachment is issued, then plaintiff may submit interrogatories in writing, in such form as may be allowed by the rules or special order of the court, to be served upon any garnishee, asking about any property of the defendant in his possession or charges, or indebtedness of his to the defendant at the time of the service of the attachment or between the time of service and the filing of his answers to the interrogatories. The garnishee shall file his answers, verified by a written declaration that the answers are made under the penalties of perjury, to the interrogatories within ten days after service upon him.

§ 16–553. Traverse of garnishee's answers; trial of issue; costs and attorney's fee.

If a garnishee answers to interrogatories that he does not have property or credits of the defendant, or has less than the amount of the plaintiff's judgment, the plaintiff may traverse the answer as to the existence or amount of the property or credits, and the issue thereby made may be tried as provided by section 16–551. In such a case, where judgment is rendered for the garnishee, the plaintiff shall be adjudged to pay to the garnishee, in addition to the taxed costs, a reasonable attorney's fee. If the issue is found for the plaintiff, judgment shall be rendered for him in accordance with the finding.

Garnishment may be used by a creditor to obtain satisfaction of the indebtedness out of credits of the debtor in the possession of a third person. Such proceedings are frequently referred to as a mode of attachment though there are substantial differences between attachment and garnishment. Attachment and garnishment exist only by statute and it is the statute that determines the extent, nature and scope of the process. 6 *Am.Jur.2d* 561, 567, Attachment and Garnishment, §§ 2, 9.

On July 24, 1980, the United States filed its judgment for record with the Office of Recorder of Deeds, Government of the District of Columbia (App. 4). On the same date a Writ of Execution was issued by the Clerk of the United States District Court of the District of Columbia (App. 5) in the case of *United States of America v. Benjamin T. Thornton,* Criminal Court No. 75–438. On the 21st of October, 1980, the Clerk issued a Writ of "Attachment on Judgment" (App. 7) and a "Notice" of garnishment with interrogatories (App. 8), all directed to William R. Brown, Jr., the "Director of Finance, Treasury Division" for Prince George's County who has possession of the money seized from Thornton. (App. 7). The writ, notice and interrogatories were served on Brown in October, 1980, (County Brief, p. 2) and on November 3, 1980, he answered the interrogatories as follows:

### INTERROGATORIES

1. Were you at the time of the service of the writ of attachment, served herewith, or have you been, between the time of such service and the filing of your answer to this interrogatory, indebted to the defendant? If so, how, and in what amount?

Answer: No.

2. Had you, at the time of the service of the writ of attachment, served herewith, or have you had between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the defendant in your possession or charge? If so, what?

Answer: Prince George's County has in its possession $15,439.24.

(App. 8).

It had become clear well before December 1, 1980, that Thornton was not to be tried on any gambling charges in Maryland that involved any of the money seized in the raid on his house. Because of this Thornton had filed for return of the money in Prince George's County District Court and the United States also filed a Statement of Claim in that court for $10,000 of the money. In that proceeding, the County District Court, implicitly recognizing the validity of the claim of the United States, directed the County to return to Thornton all money seized in excess of $10,000. Approximately $2,900 was returned to Thornton by the County pursuant to this order.

However, the $10,000 due the United States has remained in the possession of the County's Director of Finance who for no discernible reason has refused to pay same to the United States. As a result, on January 22, 1981, the United States filed a motion pursuant to 16 D.C. Code § 525[8] in the

§ 16–556. Judgment against garnishee.

(a) Subject to the provisions of subchapter III of this chapter, if a garnishee has admitted credits in his hands, in answer to interrogatories served upon him, or the credits have been found upon an issue made as provided by this chapter, judgment shall be entered against him for the amount of credits admitted or found, not exceeding the amount of the plaintiff's judgment, and costs, and execution shall be had thereon not to exceed the credits in his hands. When the credits are not immediately due and payable, execution shall be stayed until they become due.

(b) When the garnishee has failed to answer the interrogatories served on him or to appear and show cause why a judgment of condemnation should not be entered, judgment shall be entered against him for the whole amount of the plaintiff's judgment and costs, and execution may be had thereon.

8. 16 D.C. Code § 525 provides:
   In any form of action, where specific property has been attached and remains under the control of the court, judgment of condemnation of the property shall be entered, and as much thereof as may be necessary to satisfy the demand of the plaintiff shall be sold under fieri-facias. If the property was

United States District Court for the District of Columbia for judgment of condemnation of the $10,000 in issue. The County failed to make timely response, and on February 6, 1981, the court granted the United States a default judgment for the full sum. On February 10, 1981 the County filed a pleading contesting, *inter alia*, the jurisdiction of the D.C. District Court over Prince George's County, denied that the County was a garnishee and not the vested owner of the funds at issue, and further contended that the County was not a viable party to these proceedings to collect a criminal fine. No memorandum in support of this pleading was served or filed.

On February 20, 1981 the County filed a motion for relief from judgment, alleging primarily that the court's action in granting the Government's motion for judgment without a prior hearing, when the County failed to appear, denied it due process. On March 2, 1981, the District Court denied the motion for relief. The County then brought this appeal.

### IV

■ The County attacks the District Court holding on procedural and substantive grounds. Its first point is that the United States District Court had no direct statutory authority to enforce its $10,000 fine. This argument contends that the United States is required to file a separate civil action under Maryland law in order to accomplish the desired attachment.

This claim must fail. United States law controls[9] and the Federal Rules and statutes cited above clearly authorize the procedure followed by the United States. They authorize the United States to take "*proceedings supplementary* to and in aid or judgment", 28 U.S.C. § 2413 (emphasis added). It is not necessary to start a new action, civil or criminal. The garnishment is a *proceeding supplementary* to and in aid of the criminal judgment and is controlled

in the first instance by federal laws and rules.

The procedure on execution, in *proceedings supplementary* to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure *of the state in which the district court is held* [i.e., the District of Columbia [10], existing at the time the remedy is sought, except that *any statute of the United States governs to the extent that it is applicable.* (Emphasis added).

Fed.R.Civ.P. 69(a). Since the Federal Rule is applicable and it provides that the laws of the District of Columbia are to apply, it is thus the laws of the District that determine the manner in which the *supplementary proceedings* in aid of judgment are to be carried out by attachment and garnishment—not by filing a new cause of action.

Section 16–502 of the D.C. Code provides that a writ of attachment pursuant to § 16–501 is to be served on "any person in ... *possession* [of] any property or credits of the defendant ..." Section 16–507 also provides: "a) An attachment may be levied ... on the [defendant's] ... *credits in the hands of a third person*, whether due and payable or not..." (Emphasis added). The applicable statute thus provides that the United States shall cause a levy to be made upon Thornton's $10,000 "in the hands of" the County's Director of Finance by attachment pursuant to District of Columbia law in a proceeding "supplementary to and in aid of [the District Court's] judgment." That procedure was followed by the United States.

### V

The County next argues that the United States has *not* complied fully with the relevant statutes because it did not obtain personal service as allegedly required by Fed.

---

sold under interlocutory order of the court, the proceeds, or as much thereof as may be necessary, shall be applied to the plaintiff's claim by order of the court.

**9.** See Fed.R.Civ.P. 69(a), *infra.* Also set forth at p. 4, *supra.*

**10.** See n.3, *supra.*

R.Civ.P. 4(d)(6)[11] upon the "chief executive officer" of the County and that such alleged failure voids the government proceeding. In the instant case, the government served its attachment and garnishment upon the County's "Director of Finance."

The applicable statutes and rules do not support the County's contention. While it is true that Fed.R.Civ.P. 4(d)(6) provides for service of a "summons and complaint" upon a county's "chief executive officer," no summons or complaint is involved here. An execution levied pursuant to a judgment is not "like process" to a summons and complaint. The Rule further provides for service "in the manner prescribed by [state] ... law ..." In this case that means the law of the District of Columbia and the law of the District that is applicable to this supplementary proceeding is Title 16 of the D.C. Code, "Attachment and Garnishment," which provides that "[a]n attachment *shall* be levied upon *credits of the defendant, in the hands of a garnishee* by serving the garnishee ..." § 16–546, *supra.* (Emphasis added). Thus, leaving aside the fact that serving a writ of execution to attach money in the hands of a garnishee is not the service of a "summons or like process," the governing federal rule is that the person shall be garnisheed who has *possession* of the credits of the defendant "in [his] hands." In this case that is the County's Director of Finance, as is shown by his reply to the interrogatories.

The Maryland statute covering "Cash Seized in Gambling Operations" also supports the levy on the County's Director of Finance. It provides that "[U]pon the ultimate disposition of [the gambling] ... charges ... any person claiming ... any of the seized money ... may make application ... to the ... *county treasurer or director of finance* ..." Maryland Am.Stat., 1981 Cum.Supp., Art. 27, § 264(d) (emphasis added). The Maryland statute thus recognizes that the County's Director of Finance *officially* holds the alleged gambling money "in [his] hands."

In addition, it is clear that the County was not prejudiced to any extent by having process served on the Director of Finance rather than on its Chief Executive Officer. This is not a case where the interests of the Chief Executive Officer and the Director of Finance are in conflict, vis-a-vis the County. No conflict has been claimed or shown. The County was in no way prejudiced by the levy upon the officer whom Maryland statutes and Federal procedure officially designates as the officer to apply to for the seized money. We therefore hold that the levy upon the official having "possession" of the money "in [his] hands" was properly made, that such official is the proper garnishee and that the County is bound by the levy upon the funds in the official possession of its Director of Finance.

## VI

Appellant's final procedural argument is that service was made only to Director of Finance Brown in his individual capacity, i.e., that the *County* itself was never properly identified as a party. As a result, appellant concludes, the County is beyond the jurisdiction of the District Court.

This claim is plainly without merit. As set out above, Director Brown was served in his *official* capacity as Director of Finance for the County. Service was made upon him because Federal law and Federal rules that are controlling here provide that the levy shall be made upon the person having possession of the money. It is a bonus for the United States in this argument that Maryland law also designates the Director of Finance as the official to whom those who seek to apply for the ultimate disposition of garnisheed moneys should apply to. His being served officially in his capacity as

11. Fed.R.Civ.P. 4(d)(6) provides:

    (4) ... Service [of the summons and complaint] shall be made as follows:
    (6) Upon a state or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the complaint to the chief executive officer thereof or *by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant.*

a County official brings the County within the jurisdiction of this Court insofar as it may have any control over the money upon which the levy was made. The Director of Finance is the officially and statutorily designated agent of the County for the purposes here in question.

Insofar as this Court does have jurisdiction over the County in this proceeding, and insofar as service in this case was made in conformance with the controlling Federal, D.C. and Maryland law upon the officer of the County designated for such purposes by Maryland statute, thus meeting the requirements of execution by attachment and garnishment in aid of a federal judgment, we rule that all of petitioner's procedural contentions are without merit.

### VII

Appellant also contends that the County is the rightful *owner* of the contested $10,-000. Specifically, appellant invokes *that part* of the Maryland Code Annotated, article 27 § 264(a), which provides that title to money seized in a gambling raid (i.e., contraband) "shall immediately vest in and to the local governments of the city and counties and no such money, currency or cash shall be returned to any person claiming the same, or to any other person ..." However, the County ignores the *remainder* of the Maryland Code on gambling contraband which provides conclusively that the County does *not* have title to the $10,000. Subsection (d) of section 264 provides: "*dismissal* [or] ... a *nolle prosequi* with respect to the gambling charges ... involved in the seizure of the money ... is *prima facie* evidence that it is *not contraband*." (Emphasis added). Providing that such acts are not *prima facie* evidence does not establish the exclusive means for proving that seized money is not contraband. The legislative intent manifested in the statute is that money acquired by seizure that for any

reason ceases to be contraband, or that might never have acquired that status, does not rightfully belong to the County and title reverts to the original owner.[12] As no gambling charges based on the seizure have survived, the funds the County is holding have lost any character they may have acquired as contraband and cannot be construed as anything but the property of Thornton. This ruling was implicit in the decision of the Maryland judge returning the $2,900 to Thornton. The County, thus, is recognized by the Maryland decision as no longer holding legal title to the money. The Director of Finance (Treasurer), moreover, was a proper garnishee, *not* the owner of the funds, and the County's technical procedural contention that the levy executed upon the actual possessor of the funds was not effective is not well taken.

The County's attack on the validity of the levy upon the Director fails, in the first instance, because the federal code and rules control in requiring the "execution [of a criminal judgment] ... against the property of a defendant [to be] ... returnable to the court which rendered the judgment [the United States District Court for the District of Columbia] ... in accordance with the practice and procedure [in the District of Columbia] ..." 18 U.S.C. § 3565, 28 U.S.C. § 2413, Fed.R.Civ.P. 69(a), 81(e). The relevant D.C. Code section, 16 D.C. Code § 556, provides:

§ 16–556. Judgment against garnishee.

(a) Subject to the provisions of subchapter III of this chapter, if a garnishee has admitted credits in his hands, in answer to interrogatories served upon him, or the credits have been found upon an issue made as provided by this chapter, judgment shall be entered against him for the amount of credits admitted or found, not exceeding the amount of the plaintiff's judgment, and costs, and execution shall be had thereon not to exceed

---

**12.** Section 264(d) provides that claimants to alleged contraband should make applications to the "appropriate court." This procedure was observed when Thornton and the Government (separately) petitioned the District Court of Prince George's County for return of the money in the custody of County officials. In that proceeding, the record of which is not in the files in this case, the court ruled against the County, apparently deeming the absence of any resulting gambling charges as establishing that the money was not contraband.

the credits in his hands. When the credits are not immediately due and payable, execution shall be stayed until they become due.

(b) When the garnishee has failed to answer the interrogatories served on him or to appear and show cause why a judgment of condemnation should not be entered, judgment shall be entered against him for the whole amount of the plaintiff's judgment and costs, and execution may be had thereon.

The interrogatories served upon Brown, as Director of Finance, inquired whether the County had in its possession or charge "any goods, chattels, or credits of the defendant [Thornton]." He responded in his official capacity as agent of the County that it "ha[s] in its possession $15,439.24." This answer is a clear admission that Brown recognized he was holding money for the County *belonging* to Thornton. At no time did Brown represent that the County was the owner of the funds. That no gambling charges were subsequently pressed established the non-contraband character of the money and destroyed any right of the County to hold the funds as contraband. Thus, under § 16–556, *supra*, since the $10,000 was part of the "credits of the defendant in [the] ... possession" of the Director of Finance it was properly attached by the United States levy upon the designated County official who in his official capacity had the money at issue "in [his] hands," and who was statutorily designated to handle such claims. As pointed out above, Maryland law also designates that claims should be made to the County's Director of Finance.

Any doubts over rightful ownership of the money seized at the Thornton home dissolved when the United States pressed its right to $10,000 and the District Court of Prince George's County ordered that all money *in excess of the $10,000 claimed by the Government* be returned to Thornton. If the Maryland trial court had been of opinion that title in the money was vested in the County as it claims, the court would not have ordered the return of *any* portion thereof.

VIII

The County, therefore, has no valid claim to ownership of the $10,000 at issue. At this stage, by virtue of the execution levied upon Thornton's funds, and the service of the garnishment on the Director of Finance, he occupies the status of a garnishee of money that rightfully belongs to Thornton and which is completely subject to the valid judgment of the United States District Court for the District of Columbia in favor of the United States based upon the $10,000 fine adjudged against him. The County, acting through its duly designated officer William R. Brown, Jr., Director of Finance, the garnishee, is therefore required to deliver that money to the United States pursuant to the judgment of condemnation in order that it may be applied in satisfaction of the judgment against Thornton.

The judgment of the District Court is therefore affirmed.

*Judgment accordingly.*