**UNITED STATES of America, Appellant,**

v.

**Joseph TIMILTY, Appellee.**

No. 97–2371.

United States Court of Appeals,
First Circuit.

Heard May 8, 1998.
Decided June 16, 1998.

David S. Mackey, Assistant U.S. Attorney, with whom Donald K. Stern, U.S. Attorney, was on brief, for appellant.

Morris M. Goldings, with whom Alice E. Moore, Kirsten Nelson Callahan, and Mahoney, Hawkes & Goldings were on brief, for appellee.

Before STAHL, Circuit Judge, CYR, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

The United States obtained a criminal verdict against Joseph Timilty in 1993 and an attendant order that Timilty pay restitution to four banks which had been defrauded in a real estate development project. This appeal concerns questions about the limits on the government's ability to enforce such restitution orders.

The restitution order was for an amount not to exceed $60,000, although the total losses to the four banks were almost $3 million. The district court had declined to order full restitution, finding that Timilty had no money. Timilty paid only $1,866.21 of the restitution ordered. The government then sought to utilize debt collection procedures to require Timilty to appear and submit to an examination about his property and ability to pay. Timilty resisted.

The government grounded its efforts in the Victim and Witness Protection Act ("VWPA") (as it then stood),[1] 18 U.S.C. § 3663, and Fed.R.Civ.P. 69, and through those laws invoked Massachusetts debt collection practices under Mass. Gen. Laws ch. 224, § 14. That state statute permits the type of examination of judgment debtors which the government sought here. Timilty countered with a motion to dismiss, arguing that the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. §§ 3001–3308, preempted the field, that the VWPA thus gave no authority to the government, and that the FDCPA was not available to the United States since it was attempting to collect on private debts. To the extent that the United States was acting on behalf of the Resolution Trust Company, which had taken over one of the four defrauded banks, the FDCPA was still not available, Timilty argued, because the underlying contract was not entered into by the United States but by the bank when it was a private entity. See 28 U.S.C. § 3002(3). The government is not left without recourse, according to Timilty; it must first reduce each restitution order to a civil judgment and then it may seek to enforce that judgment. Timilty argues that this civil judgment method is fairer in that it will give both sides the opportunity for discovery. Timilty's motion to dismiss was granted.

The proper procedure for enforcing restitution orders is an issue of some importance and one of first impression for this court.

We reverse the dismissal of the petition. We hold that the government may proceed to enforce restitution orders for sums owing to private persons or entities under the VWPA, that the VWPA is not preempted by the FDCPA as to such orders, and that the government need not reduce a restitution order first to a civil judgment before invoking Fed.R.Civ.P. 69 and its reference to state law debt collection procedures. We do so confident that there are adequate mechanisms available to the trial judges to allow for discovery and such process as is due.

I

On May 26, 1993, Timilty was convicted of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. Four banks were injured by the scheme. On August 31, 1993, Timilty was sentenced to four months of imprisonment and two years of supervised release, and ordered to pay "restitution ... in an amount not to exceed $60,000, and in a manner prescribed by the Probation Department." The criminal judgment provided that "any payment shall be divided proportionally among the payees unless otherwise specified here."

On February 6, 1997, the government filed petitions against Timilty and fifty-five other "criminal judgment debtors," each with outstanding restitution obligations, to gain use of the post-judgment enforcement procedure contained in Mass. Gen. Laws ch. 224, § 14: an order that each defendant "appear at [an assigned] time and place ... and submit to an examination relative to his property and ability to pay." Each petition was filed under the criminal docket number of each individual felon.

On the same day, the government filed an "Omnibus Motion to Consolidate Fifty–Six Judgment Debtor Examination Petitions for the Purpose of Conducting One Initial Hearing." This motion sought an order that all the defendant-debtors appear at one initial

---

1. Congress amended 18 U.S.C. § 3663 as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, §§ 201–211, 110 Stat. 1214, 1227. The amended restitution provision applies only to sentencing proceedings where the defendant is convicted on or after April 24, 1996, the date of AEDPA's enactment. See id. at § 211. This appeal deals with a conviction prior to that time. Accordingly, we analyze § 3663 as it existed when Timilty was convicted.

hearing at which the defendant-debtors would have two choices: (1) negotiate payment of the outstanding debt with the U.S. Attorney's Office, or (2) have a debtor examination before the district judge originally assigned to the debtor's case (or the magistrate judge to whom the district judge. is paired). Aside from the one initial hearing, the motion did not seek to transfer or reassign the fifty-six debtor examination petitions away from the original sentencing judges.

The omnibus motion was initially granted and an order issued that the debtors appear for a scheduling conference before a magistrate judge. The court later decided it was inappropriate to have the debtors appear at such a hearing. The court entered an order canceling the May 15 examination and returned each petition to the appropriate sentencing judge for further proceedings. In this the court was plainly correct and the government wrong: it is the sentencing judges, highly informed about the reasons for the restitution orders, before whom further proceedings should have been sought.

The petition to examine Timilty was thus returned to his sentencing judge. On July 12, 1997, the government filed a motion for clarification of the restitution order in Timilty's case. This motion asked how the $60,000 restitution order would be allocated among the four banks injured in Timilty's scheme. Timilty filed a motion to undertake discovery of Citicorp Mortgage, Inc., one of the four banks, to see whether they would share in any award. Neither motion was ruled on.

On October 7, 1997, Timilty's motion to dismiss was granted by margin order without explanation.[2] The government appeals that dismissal.

**II**

■ The order of restitution against Timilty was entered under the authority of the VWPA, 18 U.S.C. § 3663. *See United States v. Friedman,* 143 F.3d 18, 21–22 (1st Cir. 1998) (restitution ordered to victims of defendant's offense). That statute, at subpart (h),

discusses the means of enforcement of the restitution order:

(h) An order of restitution may be enforced—

(1) by the United States—

(A) in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title; or

(B) in the same manner as a judgment in a civil action; and

(2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action.

18 U.S.C. § 3663(h). Timilty's argument raises the question of the meaning of the phrase "in the same manner as a judgment in a civil action" in § 3663(h)(1)(B). Timilty urges that the language means the United States must first obtain a civil judgment. We disagree.

■ Such a reading impermissibly reads the "in the same manner as" language out of the statute. A restitution order may be enforced in *like manner* as a civil judgment; it need not be reduced first to a civil judgment. While this point has not been specifically adjudicated, several courts have read § 3663 as having that meaning. In *United States v. Porter,* 90 F.3d 64 (2d Cir.1996), the court noted that New York (along with federal) law governed the extent to which a judgment debtor's wages could be garnished to pay an outstanding restitution order; the court did not suggest that § 3663 contained an implicit requirement of converting the restitution order into a civil judgment as a prerequisite for triggering state law enforcement proceedings. *See id.* at 69–70. And in *United States v. Cannistraro,* 694 F.Supp. 62 (D.N.J.1988), the court wrote that:

The statutes concerning the enforcement of criminal judgments which impose fines or restitution provide that these monetary judgments entered in criminal cases may be enforced by execution against the prop-

2. The motion to dismiss was based on the grounds that the government was required first to file a civil action. In the absence of an expla-

nation (which would have been helpful) as to why the motion was granted, we assume that is the reason.

erty of the defendant in the same way as judgments in civil cases.

*Id.* at 76–77 (citing 18 U.S.C. §§ 3613, 3663). The court held that the government "acted properly," *id.* at 77, under New Jersey law when it obtained a writ of execution to enforce the criminal judgment (which included both restitution and fines) against the defendant pursuant to Fed.R.Civ.P. 69(a); the court did not suggest that any intermediate steps needed to be taken. *See id.; see also United States v. Berardini,* 112 F.3d 606, 611 (2d Cir.1997) (reaching same conclusion regarding applicability of New York law).

Courts have read older statutes with similar language as having the same meaning. In *United States v. Thornton,* 672 F.2d 101 (D.C.Cir.1982), the government sought to enforce a criminal fine under a statute providing that the fine could be enforced "in like manner as judgments in civil cases." *Id.* at 103. The court wrote that:

> The manner of enforcing a judgment imposing a criminal fine in favor of the United States is provided for by 18 U.S.C. § 3565, Fed.R.Civ.P. 69(a), and 28 U.S.C. § 2413.

*Thornton,* 672 F.2d at 103. The court did not suggest that it was necessary to start a new action, civil or criminal, to engage in supplementary process proceedings. *See id.* at 102–106.[3] *See also United States v. Wickenhauser,* 710 F.2d 486, 488 n. 1 (8th Cir. 1983) (interpreting § 3565); *United States v. Powell,* 639 F.2d 224, 226 (5th Cir. Unit A Mar.1981) (same).

The legislative history of the VWPA supports the conclusion that restitution orders may be enforced like civil judgments without the order being first reduced to a judgment. The Senate Report explains that a central purpose of the VWPA's restitution provision was to emphasize restitution as an important goal of sentencing and to help victims of crime recover their losses. "The premise of the section is that the court, in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make goods [sic], to the degree possible, the harm he has caused his victim." Sen. Rep. No. 97–532, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536. As for the "in the same manner" language, the Senate Report states that the provision was designed to "substantially increase[ ] the victim's chances of collecting restitution," and that the provision did this "by permitting either the victim or the United States to enforce the order in the same manner as a judgment in a civil action." *Id.* at 2539. The history indicates that Congress intended the VWPA to facilitate, not complicate, enforcement of restitution orders. There is no suggestion that the statute silently contains additional procedural requirements. Rather, the directness of the Senate Report reinforces the directness of the statute.[4]

Although a restitution order operates as a civil judgment for enforcement purposes, courts of appeals which have addressed the issue in other contexts have concluded that a restitution order is not in and of itself a civil judgment. *See United States v. Mindel,* 80 F.3d 394, 398 (9th Cir.1996); *United States v. Johnson,* 983 F.2d 216, 220 (11th Cir.1993); *United States v. Palma,* 760 F.2d 475, 479–80 (3d Cir.1985); *United States v. Brown,* 744 F.2d 905, 910 (2d Cir.1984). There are good reasons for this. A district court may revoke or modify a restitution order. *See* 18 U.S.C. § 3664(k). That may not be so easily done with a civil judgment. *See, e.g., U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (mootness by reason of settlement does not justify vacatur of a federal civil judgment under review). In many instances, this flexibility—inherent in a restitution order and not in a civil judgment—will work in favor of a criminal defendant.

■ Timilty nonetheless argues that the FDCPA preempts the VWPA and that, as such, the government may not enforce resti-

---

3. Today, fines are debts owed the government for purposes of the FDCPA. *See* 28 U.S.C. § 3002(3)(B).

4. The Senate Report states that "under this subsection, Rule 64 of the Federal Rules' of Civil Procedure is made applicable, and the remedies available include arrest, attachment, garnishment, replevin and sequestration." *Id.* Rule 64 governs the means of securing satisfaction of a civil judgment. *See* Fed.R.Civ.P. 64.

tution orders under the FDCPA where the debt is owing to private parties. He relies largely on § 3001 of the FDCPA, stating that the FDCPA "provides the exclusive civil procedures for the United States ... to recover a judgment on a debt...." 28 U.S.C. § 3001(a)(1). Timilty says that this language means that the FDCPA preempts the VWPA, and thus the government can collect money only through FDCPA procedures.

Timilty secondly argues that the FDCPA, by its terms, see 28 U.S.C. § 3002(3)(B), and as interpreted by this court in *United States v. Bongiorno*, 106 F.3d 1027, 1036–40 (1st Cir.), reh'g en banc denied, 110 F.3d 132 (1997), applies only to debts owing to the United States. Timilty points out that his restitution order is not owed to the United States, but private banks; therefore, he says, the government may not enforce the order at all.

The foundation of Timilty's arguments rests on sand. The FDCPA, while including restitution among the classes of debt to which the FDCPA applies, see 28 U.S.C. § 3002(3)(B), specifically disclaims control over operation of statutes such as the VWPA:

This chapter shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law ... to collect any fine, penalty, assessment, *restitution*, or forfeiture arising in a criminal case.

28 U.S.C. § 3003(b)(2) (emphasis added).

[4] Further, that the FDCPA applies only to debts owing to the United States works against Timilty, not for him. As said in *Bongiorno*, "types of restitution, which, when paid will not increase public revenues (say, restitution to an individual victim of a crime), do not come with the statutory encincture [of the FDCPA]." *Bongiorno*, 106 F.3d at 1039. This court further explained in *Bongiorno*, in dicta, that state law enforcement procedures are available and appropriate where the government seeks to enforce restitution orders for sums owed to private parties:

The government ... can attempt to collect the restitution order by resort to other civil remedies, see 28 U.S.C. § 3003(b) (providing that the United States retains its authority under laws other than the

FDCPA to collect debts owed to the government); see also Fed.R.Civ.P. 64 & 69.

*Id.* at 1040 (panel opinion), and

We note ... that the panel opinion in no way obstructs the government's ability to use section 3663(h) appropriately, that is, in tandem with conventional civil remedies (e.g., Fed.R.Civ.P. 64, 69) as a vehicle for collecting restitution....

*Bongiorno*, 110 F.3d at 134 (denying petition for rehearing en banc). In sum, the FDCPA does not affect the government's capacity under the VWPA to collect restitution orders for sums owing to private parties. Indeed, the FDCPA is largely irrelevant to this case.

■ Because the VWPA alone governs the enforcement of Timilty's restitution order, and the VWPA provides that restitution orders are enforced "in the same manner as" civil judgments, we turn to Fed.R.Civ.P. 69. This rule provides the mechanism for "enforc[ing] a judgment for the payment of money," Fed.R.Civ.P. 69(a), and states that:

[T]he judgment creditor ... may obtain discovery from any person, including the judgment debtor, ... in the manner provided by the practice of the state in which the district court is held.

*Id.* Hence we turn to Massachusetts law:

A judgment creditor or a person in his behalf may file in court an application for supplementary process.... Upon the filing of such an application, a summons may issue, requiring the judgment debtor to appear at a time and place named therein and submit to an examination relative to his or its property and ability to pay.

Mass. Gen. Laws ch. 224, § 14. We conclude that it is appropriate for the government to seek the hearing provided in this statute.

### III

The concerns Timilty raises about the type of process to be followed in debtor examinations are misplaced. Although not articulated in his brief, those concerns, articulated at oral argument, are largely that the criminal judgment debtor have an adequate opportunity in such proceedings to show inability to pay or to pay on a particular schedule. But Massachusetts law satisfies that concern by providing that both judgment creditors and judgment debtors may introduce evidence at

the supplementary process hearing. *See* Mass. Gen. Laws ch. 224, § 15 (stating that "[e]ither party may introduce additional evidence" during a § 14 hearing). Timilty's fears on this point are hypothetical.

Timilty may also be concerned that a failure to pay a restitution order may ultimately lead to reimprisonment. Imprisonment may indeed result from failure to pay a restitution order. For example, a court could modify or revoke a criminal judgment debtor's probation and require him to serve in prison "all or part of the term of supervised release authorized by the statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision. . . ." 18 U.S.C. § 3583(e)(3). Before this can happen, however, the court must reconsider factors initially considered when sentence was imposed, *see* 18 U.S.C. § 3553(a) (laying out the factors), and find by "a preponderance of the evidence that the defendant violated a condition of his supervised release." 18 U.S.C. § 3583(e)(3).[5] This would require a hearing. Alternatively, the government could seek to have a defendant resentenced to "any sentence which might originally have been imposed" for failure to pay, 18 U.S.C. § 3614, held in criminal default and sentenced up to a year, *see* 18 U.S.C. § 3615, or held in contempt, *see* 18 U.S.C. § 3663(g) (referring to 18 U.S.C. § 3583(e)). These also require further proceedings before a judge.[6]

The decision of the district court is *vacated* and the case *remanded* to the district court for proceedings consistent with this opinion.[7]

---

5. 18 U.S.C. § 3583(d), which provides primarily for certain mandatory conditions of supervised release, also states that the court "may order, as a further condition of supervised release, . . . any condition set further as a discretionary condition of probation" in 18 U.S.C. § 3563. Subsection (b)(2) of § 3563 includes "mak[ing] restitution to a victim of the offense" among the discretionary conditions.

6. As for Timilty's argument that the district court improperly delegated the terms of his restitution to the probation office, this argument is waived and is, in any event, without merit. There was nothing irregular in the district court's decision to permit the probation department to determine the repayment schedule when the judge reviewed and approved that schedule. *See, e.g., United States v. Fuentes*, 107 F.3d 1515, 1528 (11th Cir.1997).

7. Nothing in this opinion should be interpreted to suggest a view as to the outcome of a hearing on Timilty's ability to pay.