USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 97-2371

 UNITED STATES OF AMERICA,

 Appellant,

 v.

 JOSEPH TIMILTY,

 Appellee.
 
 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Rya W. Zobel, U.S. District Judge]

 ____________________

 Before

 Stahl, Circuit Judge,
 
 Cyr, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 
 ____________________
 
 David S. Mackey, Assistant U.S. Attorney, with whom Donald K.
Stern, U.S. Attorney, was on brief, for appellant.
 Morris M. Goldings, with whom Alice E. Moore, Kirsten Nelson
Callahan, and Mahoney, Hawkes & Goldings were on brief, for
appellee.
 
 ____________________
 
 June 16, 1998
____________________ 

 LYNCH, Circuit Judge. The United States obtained a
criminal verdict against Joseph Timilty in 1993 and an attendant 
order that Timilty pay restitution to four banks which had been
defrauded in a real estate development project. This appeal
concerns questions about the limits on the government's ability to
enforce such restitution orders. 
 The restitution order was for an amount not to exceed
$60,000, although the total losses to the four banks were almost $3
million. The district court had declined to order full
restitution, finding that Timilty had no money. Timilty paid only
$1,866.21 of the restitution ordered. The government then sought
to utilize debt collection procedures to require Timilty to appear
and submit to an examination about his property and ability to pay. 
Timilty resisted.
 The government grounded its efforts in the Victim and
Witness Protection Act ("VWPA") (as it then stood), 18 U.S.C. 
3663, and Fed. R. Civ. P. 69, and through those laws invoked
Massachusetts debt collection practices under Mass. Gen. Laws ch.
224, 14. That state statute permits the type of examination of
judgment debtors which the government sought here. Timilty
countered with a motion to dismiss, arguing that the Federal Debt
Collection Procedure Act ("FDCPA"), 28 U.S.C. 3001-3308,
preempted the field, that the VWPA thus gave no authority to the
government, and that the FDCPA was not available to the United
States since it was attempting to collect on private debts. To the
extent that the United States was acting on behalf of the
Resolution Trust Company, which had taken over one of the four
defrauded banks, the FDCPA was still not available, Timilty argued,
because the underlying contract was not entered into by the United
States but by the bank when it was a private entity. See 28 U.S.C.
 3002(3). The government is not left without recourse, according
to Timilty; it must first reduce each restitution order to a civil
judgment and then it may seek to enforce that judgment. Timilty
argues that this civil judgment method is fairer in that it will
give both sides the opportunity for discovery. Timilty's motion to
dismiss was granted.
 The proper procedure for enforcing restitution orders is
an issue of some importance and one of first impression for this
court. We reverse the dismissal of the petition. We hold that the
government may proceed to enforce restitution orders for sums owing
to private persons or entities under the VWPA, that the VWPA is not
preempted by the FDCPA as to such orders, and that the government
need not reduce a restitution order first to a civil judgment
before invoking Fed. R. Civ. P. 69 and its reference to state law
debt collection procedures. We do so confident that there are
adequate mechanisms available to the trial judges to allow for
discovery and such process as is due.

 I
 On May 26, 1993, Timilty was convicted of one count of
conspiracy to commit wire fraud in violation of 18 U.S.C. 371. 
Four banks were injured by the scheme. On August 31, 1993, Timilty
was sentenced to four months of imprisonment and two years of
supervised release, and ordered to pay "restitution . . . in an
amount not to exceed $60,000, and in a manner prescribed by the
Probation Department." The criminal judgment provided that "any
payment shall be divided proportionally among the payees unless
otherwise specified here."
 On February 6, 1997, the government filed petitions
against Timilty and fifty-five other "criminal judgment debtors,"
each with outstanding restitution obligations, to gain use of the
post-judgment enforcement procedure contained in Mass. Gen. Laws
ch. 224, 14: an order that each defendant "appear at [an
assigned] time and place . . . and submit to an examination
relative to his property and ability to pay." Each petition was
filed under the criminal docket number of each individual felon. 
 On the same day, the government filed an "Omnibus Motion
to Consolidate Fifty-Six Judgment Debtor Examination Petitions for
the Purpose of Conducting One Initial Hearing." This motion sought
an order that all the defendant-debtors appear at one initial
hearing at which the defendant-debtors would have two choices: (1)
negotiate payment of the outstanding debt with the U.S. Attorney's
Office, or (2) have a debtor examination before the district judge
originally assigned to the debtor's case (or the magistrate judge
to whom the district judge is paired). Aside from the one initial
hearing, the motion did not seek to transfer or reassign the fifty-
six debtor examination petitions away from the original sentencing
judges.
 The omnibus motion was initially granted and an order
issued that the debtors appear for a scheduling conference before
a magistrate judge. The court later decided it was inappropriate
to have the debtors appear at such a hearing. The court entered an
order canceling the May 15 examination and returned each petition
to the appropriate sentencing judge for further proceedings. In
this the court was plainly correct and the government wrong: it is
the sentencing judges, highly informed about the reasons for the
restitution orders, before whom further proceedings should have
been sought.
 The petition to examine Timilty was thus returned to his
sentencing judge. On July 12, 1997, the government filed a motion
for clarification of the restitution order in Timilty's case. This
motion asked how the $60,000 restitution order would be allocated
among the four banks injured in Timilty's scheme. Timilty filed a
motion to undertake discovery of Citicorp Mortgage, Inc., one of
the four banks, to see whether they would share in any award. 
Neither motion was ruled on.
 On October 7, 1997, Timilty's motion to dismiss was
granted by margin order without explanation. The government
appeals that dismissal.
 II
 The order of restitution against Timilty was entered
under the authority of the VWPA, 18 U.S.C. 3663. See United
States v. Friedman, No. 97-2100, 1998 WL 210960 at *4 (1st Cir.
Mar. 3, 1998) (restitution ordered to victims of defendant's
offense). That statute, at subpart (h), discusses the means of
enforcement of the restitution order:
 (h) An order of restitution may be enforced--
 (1) by the United States--
 (A) in the manner provided for the
 collection and payment of fines in
 subchapter B of chapter 229 of
 this title; or
 (B) in the same manner as a judgment
 in a civil action; and
 (2) by a victim named in the order to 
 receive the restitution, in the same
 manner as a judgment in a civil action.
18 U.S.C. 3663(h). Timilty's argument raises the question of the
meaning of the phrase "in the same manner as a judgment in a civil
action" in 3663(h)(1)(B). Timilty urges that the language means
the United States must first obtain a civil judgment. We disagree. 
 Such a reading impermissibly reads the "in the same
manner as" language out of the statute. A restitution order may be
enforced in like manner as a civil judgment; it need not be reduced
first to a civil judgment. While this point has not been
specifically adjudicated, several courts have read 3663 as having
that meaning. In United States v. Porter, 90 F.3d 64 (2d Cir.
1996), the court noted that New York (along with federal) law
governed the extent to which a judgment debtor's wages could be
garnished to pay an outstanding restitution order; the court did
not suggest that 3663 contained an implicit requirement of
converting the restitution order into a civil judgment as a
prerequisite for triggering state law enforcement proceedings. Seeid. at 69-70. And in United States v. Cannistraro, 694 F. Supp. 62
(D.N.J. 1988), the court wrote that: 
 The statutes concerning the enforcement of
 criminal judgments which impose fines or
 restitution provide that these monetary
 judgments entered in criminal cases may be
 enforced by execution against the property of
 the defendant in the same way as judgments in
 civil cases.

Id. at 76-77 (citing 18 U.S.C. 3613, 3663). The court held that
the government "acted properly," id. at 77, under New Jersey law
when it obtained a writ of execution to enforce the criminal
judgment (which included both restitution and fines) against the
defendant pursuant to Fed. R. Civ. P. 69(a); the court did not
suggest that any intermediate steps needed to be taken . See id.;
see also United States v. Berardini, 112 F.3d 606, 611 (2d Cir.
1997) (reaching same conclusion regarding applicability of New York
law).
 Courts have read older statutes with similar language as
having the same meaning. In United States v. Thornton, 672 F.2d
101 (D.C. Cir. 1982), the government sought to enforce a criminal
fine under a statute providing that the fine could be enforced "in
like manner as judgments in civil cases." Id. at 103. The court
wrote that:
 The manner of enforcing a judgment imposing a
 criminal fine in favor of the United States is
 provided for by 18 U.S.C. 3565, Fed. R. Civ.
 P. 69(a), and 28 U.S.C. 2413.

Thornton, 672 F.2d at 103. The court did not suggest that it was
necessary to start a new action, civil or criminal, to engage in
supplementary process proceedings. See id. at 102-106. See alsoUnited States v. Wickenhauser, 710 F.2d 486, 488 n.1 (8th Cir.
1983) (interpreting 3565); United States v. Powell, 639 F.2d 224,
226 (5th Cir. Unit A Mar. 1981) (same). 
 The legislative history of the VWPA supports the
conclusion that restitution orders may be enforced like civil
judgments without the order being first reduced to a judgment. The
Senate Report explains that a central purpose of the VWPA's
restitution provision was to emphasize restitution as an important
goal of sentencing and to help victims of crime recover their
losses. "The premise of the section is that the court, in devising
just sanctions for adjudicated offenders, should insure that the
wrongdoer make goods [sic], to the degree possible, the harm he has
caused his victim." Sen. Rep. No. 97-532, 97th Cong., 2d Sess.
(1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2536. As for the "in
the same manner" language, the Senate Report states that the
provision was designed to "substantially increase[] the victim's
chances of collecting restitution," and that the provision did this
"by permitting either the victim or the United States to enforce
the order in the same manner as a judgment in a civil action." Id.at 2539. The history indicates that Congress intended the VWPA to
facilitate, not complicate, enforcement of restitution orders. 
There is no suggestion that the statute silently contains
additional procedural requirements. Rather, the directness of the
Senate Report reinforces the directness of the statute.
 Although a restitution order operates as a civil judgment
for enforcement purposes, courts of appeals which have addressed
the issue in other contexts have concluded that a restitution order
is not in and of itself a civil judgment. See United States v.
Mindel, 80 F.3d 394, 398 (9th Cir. 1996); United States v. Johnson,
983 F.2d 216, 220 (11th Cir. 1993); United States v. Palma, 760
F.2d 475, 479-80 (3d Cir. 1985); United States v. Brown, 744 F.2d
905, 910 (2d Cir. 1984). There are good reasons for this. A
district court may revoke or modify a restitution order. See 18
U.S.C. 3664(k). That may not be so easily done with a civil
judgment. See, e.g., U.S. Bancorp Mortgage Co. v. Bonner Mall
Partnership, 513 U.S. 18, 29 (1994) (mootness by reason of
settlement does not justify vacatur of a federal civil judgment
under review). In many instances, this flexibility -- inherent in
a restitution order and not in a civil judgment -- will work in
favor of a criminal defendant.
 Timilty nonetheless argues that the FDCPA preempts the
VWPA and that, as such, the government may not enforce restitution
orders under the FDCPA where the debt is owing to private parties. 
He relies largely on 3001 of the FDCPA, stating that the FDCPA
"provides the exclusive civil procedures for the United States . .
. to recover a judgment on a debt . . . ." 28 U.S.C. 3001(a)(1). 
Timilty says that this language means that the FDCPA preempts the
VWPA, and thus the government can collect money only through FDCPA
procedures. 
 Timilty secondly argues that the FDCPA, by its terms, see28 U.S.C. 3002(3)(B), and as interpreted by this court in United
States v. Bongiorno, 106 F.3d 1027, 1036-40 (1st Cir.), reh'g en
banc denied, 110 F.3d 132 (1997), applies only to debts owing to
the United States. Timilty points out that his restitution order
is not owed to the United States, but private banks; therefore, he
says, the government may not enforce the order at all.
 The foundation of Timilty's arguments rests on sand. The
FDCPA, while including restitution among the classes of debt to
which the FDCPA applies, see 28 U.S.C. 3002(3)(B), specifically
disclaims control over operation of statutes such as the VWPA: 
 This chapter shall not be construed to curtail
 or limit the right of the United States under
 any other Federal law or any State law . . .
 to collect any fine, penalty, assessment,
 restitution, or forfeiture arising in a
 criminal case.

28 U.S.C. 3003(b)(2) (emphasis added). 
 Further, that the FDCPA applies only to debts owing to
the United States works against Timilty, not for him. As said in
Bongiorno, "types of restitution, which, when paid will not
increase public revenues (say, restitution to an individual victim
of a crime), do not come with the statutory encincture [of the
FDCPA]." Bongiorno, 106 F.3d at 1039. This court further
explained in Bongiorno, in dicta, that state law enforcement
procedures are available and appropriate where the government seeks
to enforce restitution orders for sums owed to private parties:
 The government . . . can attempt to collect
 the restitution order by resort to other civil
 remedies, see 28 U.S.C. 3003(b) (providing
 that the United States retains its authority
 under laws other than the FDCPA to collect
 debts owed to the government); see also Fed.
 R. Civ. P. 64 & 69.

Id. at 1040 (panel opinion), and
 We note . . . that the panel opinion in no way
 obstructs the government's ability to use
 section 3663(h) appropriately, that is, in
 tandem with conventional civil remedies (e.g.,
 Fed. R. Civ. P. 64, 69) as a vehicle for
 collecting restitution . . . .

Bongiorno, 110 F.3d at 134 (denying petition for rehearing en
banc). In sum, the FDCPA does not affect the government's capacity
under the VWPA to collect restitution orders for sums owing to
private parties. Indeed, the FDCPA is largely irrelevant to this
case.
 Because the VWPA alone governs the enforcement of
Timilty's restitution order, and the VWPA provides that restitution
orders are enforced "in the same manner as" civil judgments, we
turn to Fed. R. Civ. P. 69. This rule provides the mechanism for
"enforc[ing] a judgment for the payment of money," Fed. R. Civ. P.
69(a), and states that: 
 [T]he judgment creditor . . . may obtain
 discovery from any person, including the
 judgment debtor, . . . in the manner provided
 by the practice of the state in which the
 district court is held. 
 
Id. Hence we turn to Massachusetts law:
 A judgment creditor or a person in his behalf
 may file in court an application for
 supplementary process . . . . Upon the filing
 of such an application, a summons may issue,
 requiring the judgment debtor to appear at a
 time and place named therein and submit to an
 examination relative to his or its property
 and ability to pay.

Mass. Gen. Laws ch. 224, 14. We conclude that it is appropriate
for the government to seek the hearing provided in this statute.
 III
 The concerns Timilty raises about the type of process to
be followed in debtor examinations are misplaced. Although not
articulated in his brief, those concerns, articulated at oral
argument, are largely that the criminal judgment debtor have an
adequate opportunity in such proceedings to show inability to pay
or to pay on a particular schedule. But Massachusetts law
satisfies that concern by providing that both judgment creditors
and judgment debtors may introduce evidence at the supplementary
process hearing. See Mass. Gen. Laws ch. 224, 15 (stating that
"[e]ither party may introduce additional evidence" during a 14
hearing). Timilty's fears on this point are hypothetical.
 Timilty may also be concerned that a failure to pay a
restitution order may ultimately lead to reimprisonment. 
Imprisonment may indeed result from failure to pay a restitution
order. For example, a court could modify or revoke a criminal
judgment debtor's probation and require him to serve in prison "all
or part of the term of supervised release authorized by the statute
for the offense that resulted in such term of supervised release
without credit for time previously served on postrelease
supervision . . . ." 18 U.S.C. 3583(e)(3). Before this can
happen, however, the court must reconsider factors initially
considered when sentence was imposed, see 18 U.S.C. 3553(a)
(laying out the factors), and find by "a preponderance of the
evidence that the defendant violated a condition of his supervised
release." 18 U.S.C. 3583(e)(3). This would require a hearing. 
Alternatively, the government could seek to have a defendant
resentenced to "any sentence which might originally have been
imposed" for failure to pay, 18 U.S.C. 3614, held in criminal
default and sentenced up to a year, see 18 U.S.C. 3615, or held
in contempt, see 18 U.S.C. 3663(g) (referring to 18 U.S.C. 
3583(e)). These also require further proceedings before a judge.
 The decision of the district court is vacated and the
case remanded to the district court for proceedings consistent with
this opinion.