**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MICHAEL MAYS,
          *Defendant-Appellant.*

No. 04-50378

D.C. No.
CR-98-03213-JM

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
June 8, 2005—Pasadena, California

Filed October 19, 2005

Before: Donald P. Lay,* Alex Kozinski and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Kozinski

---

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

14375

**COUNSEL**

Kurt D. Hermansen and Robert H. Rexrode, III, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Carol C. Lam, United States Attorney, Roger W. Haines, Jr., Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and Leah R. Bussell, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

KOZINSKI, Circuit Judge:

We consider whether a federal district court may garnish the wages of a criminal defendant who fails to pay a judgment of restitution imposed by that court.

**Facts**

Michael Mays pled guilty to conspiracy to commit mail fraud. The court imposed a custodial sentence and supervised release. Pursuant to the Mandatory Victims Restitution Act of 1996 (MVRA), Pub. L. No. 104-132, 110 Stat. 1227 (1996) (codified in relevant part at 18 U.S.C. §§ 3663A-3664), the court ordered Mays to pay restitution. *See id.* § 3556.

Mays made only nominal payments on his judgment and, so, shortly before termination of his supervised release, the United States applied to the district court for a writ of contin-

uing garnishment against Mays and his employer. The government did not initiate a separate civil action to enforce the judgment, but instead filed the garnishment application under the docket number for Mays's criminal case.

The district court notified Mays and his employer that Mays's wages were being garnished and provided instructions on how to challenge the garnishment order. *See* 28 U.S.C. §§ 3202(b), 3202(d), 3205(c)(5). A hearing was held prior to the termination of Mays's supervised release to review the garnishment order. At the hearing, Mays indicated that he had a jurisdictional objection to the garnishment order. The hearing was continued to permit additional briefing on Mays's objection.

A second hearing was held on the matter following termination of Mays's supervised release. At this hearing, Mays raised the following objections to the writ of garnishment: First, Mays argued that the district court lacked jurisdiction to issue a writ of garnishment under a criminal docket number. Second, Mays argued that even if the writ could issue in a criminal case, it could not issue here because it had not been finalized prior to the termination of his supervised release. And third, Mays argued that even if the garnishment order had been finalized prior to the termination of his supervised release, the order nevertheless terminated upon completion of his supervision. Mays did not contest the government's right to seek a writ of garnishment against him, but argued that the judgment must be enforced in a separate civil action. Mays's motion to dismiss the writ of garnishment was denied, and this appeal followed.

## Appellate Jurisdiction

We review the existence of subject matter jurisdiction de novo. *See Chang* v. *United States*, 327 F.3d 911, 922 (9th Cir. 2003). The government argues that *United States* v. *Moore*, 878 F.2d 331 (9th Cir. 1989) (per curiam), deprives us of

jurisdiction to hear this appeal. In *Moore*, we held that we lacked jurisdiction to review a district court's denial of a motion to quash a writ of execution relating to a garnishment order. *Id.* at 331.

**[1]** The appeal in *Moore* of the denial of the motion to quash was interlocutory,[1] and this was pivotal to the *Moore* court's conclusion that it lacked appellate jurisdiction. *See Moore*, 878 F.2d at 331 (citing *Loeber* v. *Schroeder*, 149 U.S. 580, 585 (1893) ("Refusal to quash a writ is not a final judgment."); *Steccone* v. *Morse-Starrett Products Co.*, 191 F.2d 197, 199 (9th Cir. 1951) ("[T]his court lacks jurisdiction inasmuch as the order appealed from is not one which finally disposes of an entire controversy between the parties and is, therefore, not an appealable order.")). By contrast, when the district court denied Mays's motion to dismiss the writ of garnishment, there were no other matters before the district court relating to Mays's criminal case. The district court's denial of Mays's motion to dismiss the writ of garnishment was therefore a final judgment, and accordingly, we have jurisdiction to hear the appeal. *See Catlin* v. *United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

**District Court's Jurisdiction To Order Garnishment**

**[2] 1.** The Federal Debt Collection Procedures Act of 1990 (FDCPA), 28 U.S.C. §§ 3001-3308, sets forth the "exclusive civil procedures for the United States . . . to recover a judgment on . . . an amount that is owing to the United States on account of . . . restitution." *Id.* §§ 3001(a)(1), 3002(3)(B). The FDCPA was enacted "to give the Justice Department uniform Federal procedures—prejudgment reme-

---

[1]An "interlocutory appeal" is "[a]n appeal that occurs before the trial court's final ruling on the entire case." *Black's Law Dictionary* 106 (8th ed. 2004).

dies and postjudgment remedies—to collect debts owed the United States nationwide." H.R. Rep. No. 103-883, at 81 (1995). Six years after passing the FDCPA, Congress enacted the Mandatory Victims Restitution Act, which made restitution mandatory for certain crimes, including conspiracy to commit mail fraud, the crime of which Mays was convicted. *See* 18 U.S.C. §§ 371, 1341, 3663A(a)(1), 3663A(c)(1)(A)(ii). Although the MVRA is a criminal statute, it expressly, albeit tortuously, provides that the FDCPA's civil enforcement remedies may be used to enforce orders of restitution entered under the MVRA.

Section 202 of the MVRA provides that "[t]he procedures under section 3664 shall apply to all orders of restitution under this section." § 202, 110 Stat. at 1227 (codified at 18 U.S.C. § 3556). Section 3664 in turn provides that "[a]n order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title." 18 U.S.C. § 3664(m)(1)(A)(i). Section 3613, which is part of subchapter B of chapter 229, provides that "[t]he United States may enforce a judgment imposing a fine[2] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law [i.e., the FDCPA]." *Id.* § 3613(a). Section 3205 of the FDCPA in turn provides that "[a] court may issue a writ of garnishment . . . in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a).

**[3]** Mays, however, claims that even though the MVRA authorizes use of the FDCPA to enforce criminal judgments, the government must file a garnishment order under a civil docket number, rather than under the existing docket number for the defendant's criminal case. However, nothing in the statute or in its history supports such a contention. To the contrary, had it been satisfied with letting the United States col-

---

[2] Section 3613 provides that "fines" include orders of restitution. *See id.* § 3613(f).

lect fines and restitution by means of a separate civil action, Congress need not have said anything at all in the MVRA about debt collection; the government was already authorized to collect debts owed to it by means of a civil action. By specifically importing the FDCPA's procedures into the MVRA, Congress clearly meant to make those procedures available in criminal cases.

Nor is this the first case to so interpret the MVRA. In *United States* v. *Scarboro*, 352 F. Supp. 2d 714 (E.D. Va. 2005), the United States filed a motion under the defendant's criminal docket number to enforce a prior judgment of restitution under the MVRA. *See id.* at 716. The district court there held that the government was not required to file a separate civil action to enforce the judgment. *Id.* at 717. Rather, the government was entitled to rely on the lien created in favor of it by section 3613(c),**³** and therefore a separate civil judgment was unnecessary. The court concluded that the United States could enforce its prior judgment in a criminal proceeding. *See Scarboro*, 352 F. Supp. 2d at 716-17.

**[4]** Courts interpreting prior versions of the MVRA have reached the same conclusion. Prior to the MVRA's enactment, former section 3663(h) had provided that "[a]n order of restitution may be enforced by the United States . . . in the same manner as a judgment in a civil action." Pub. L. No. 98-473, § 212(a)(3)(B), 98 Stat. 1837, 2010 (1984). In *Lyndonville Savings Bank & Trust Co.* v. *Lussier*, the Second Circuit interpreted former section 3663(h) by adopting the Eleventh Circuit's interpretation of the section's immediate predecessor, section 3579(h), which contained identical language. 211 F.3d 697, 702 (2d Cir. 2000). *Lyndonville* held that "Congress

---

**³**Section 3613(c) provides that "an order of restitution made pursuant to [the MVRA] . . . is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code." 18 U.S.C. § 3613(c).

intended to make restitution an element of the criminal sentencing process and not an independent action civil in nature." *Id.* (quoting *United States* v. *Satterfield*, 743 F.2d 827, 837 (11th Cir. 1984)) (internal quotation marks omitted). Similarly, in *United States* v. *Timilty*, the First Circuit held that the "in the same manner as a judgment in a civil action" language of former section 3663(h) did not require the United States to obtain a civil judgment prior to enforcing a criminal restitution order. 148 F.3d 1, 3-4 (1st Cir. 1998).

Finally, in *United States* v. *Thornton*, the D.C. Circuit interpreted former section 3565, which contained language similar to the current version of section 3613, to have the same meaning as the statutes in *Scarboro*, *Lyndonville* and *Timilty*. *See* 672 F.2d 101, 103-04 (D.C. Cir. 1982).[4] In *Thornton*, the United States sought to enforce a criminal fine by garnishing property of the defendant under a statute providing that the fine could be enforced "in like manner as judgments in civil cases." *Id.* at 103 (emphasis omitted) (quoting former section 3565) (internal quotation marks omitted). The *Thornton* court "did not suggest that it was necessary to start

---

[4]Former section 3565 was enacted in 1948 and, until amended by the Criminal Fine Enforcement Act of 1984, *see* Pub. L. No. 98-596, § 2, 98 Stat. 3134, 3134 (1984), provided that "[i]n all criminal cases in which judgment or sentence is rendered . . . the fine . . . may be enforced by execution against the property of the defendant in like manner as judgments in civil cases." 62 Stat. 837 (1948). Subsequent to *Thornton*, Congress enacted the Victim and Witness Protection Act of 1982 (VWPA). *See* Pub. L. No. 97-291, 96 Stat. 1248 (1982). The VWPA left section 3565 in effect, but added section 3579(h), which permitted victims, in addition to the government, to enforce orders of restitution. *See* § 5(a), 96 Stat. at 1255. Section 3565 was eventually repealed by the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1837, 1987 (1984). Section 3579(h) was redesignated as section 3663 by the Sentencing Reform Act, *see* § 212(a)(1), 98 Stat. at 1987, and later amended by the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, *see* Pub. L. No. 101-647, § 2509, 104 Stat. 4859, 4863 (1990), and the MVRA, *see* § 205(a), 110 Stat. at 1229-31, to its present form.

a new action, civil or criminal, to engage in supplementary process proceedings." *Timilty*, 148 F.3d at 4 (citing *Thornton*, 672 F.2d at 102-06). We are aware of no cases reaching a contrary conclusion.

Congress thus enacted the current version of the MVRA against the backdrop of an unbroken line of judicial authority interpreting materially indistinguishable statutes authorizing the United States to enforce judgments of restitution in criminal cases without initiating separate civil actions. We presume that Congress's decision to enact pertinent parts of the MVRA in a form materially unchanged from its predecessor statutes indicated agreement, or at least acquiescence, to then-existing interpretations of those prior statutes. *Cf. Cannon* v. *Univ. of Chi.*, 441 U.S. 677, 696-703 (1979) (history of congressional acquiescence may be considered to determine legislative intent).

**[5] 2.** Mays next argues that, even if district courts are authorized to enter garnishment orders in criminal cases, the district court here no longer had jurisdiction to do so because the garnishment order did not become effective until his supervised release had ended. But supervised release is merely an ancillary postjudgment remedy; it is not a reopening of the criminal judgment, which presumably is final by the time supervised release commences.

**[6]** The existence or non-existence of supervised release has no bearing on the district court's jurisdiction to enter a postjudgment garnishment order. Garnishments are generally postjudgment remedies and thus would normally be entered after the case giving rise to the debt had come to an end. Even were it true that the garnishment order did not become effective until Mays's release had ended, which we seriously doubt, the district court had jurisdiction to enter postjudgment remedies, such as garnishment.

**[7] 3.** Mays finally argues that, even if the garnishment order was in effect during his supervised release, it didn't sur-

vive his release's termination. Again, however, supervised release and garnishment are separate proceedings, and thus termination of one has no effect on the court's authority to order the other. Moreover, the FDCPA provides that

> [a] garnishment under this chapter is terminated only by—
>
>> (A)   a court order quashing the writ of garnishment;
>>
>> (B)   exhaustion of property in the possesion [sic], custody, or control of the garnishee in which the debtor has a substantial nonexempt interest (including nonexempt disposable earnings), unless the garnishee reinstates or reemploys the judgment debtor within 90 days after the judgment debtor's dismissal or resignation; or
>>
>> (C)   satisfaction of the debt with respect to which the writ is issued.

28 U.S.C. § 3205(c)(10). Upon termination of Mays's supervised release, (1) no court had quashed the writ of garnishment, (2) property of Mays was within the possession of the garnishee and (3) Mays had an outstanding judgment. Termination of Mays's supervised release did not terminate the garnishment order.

   **AFFIRMED.**