In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 06-2034

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANK KOLLINTZAS,

*Defendant.*

APPEAL OF:

JOANNA KOLLINTZAS,

*Interested Person.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 CR 91—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED NOVEMBER 27, 2006—DECIDED SEPTEMBER 5, 2007

———————

Before EASTERBROOK, *Chief Judge,* and ROVNER and
SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* A jury found Frank Kollintzas
guilty of converting large sums of money from the City of
East Chicago, Indiana. After the trial Kollintzas disap-
peared. The district court sentenced him in absentia and
ordered that he pay over $25 million in restitution. The
government immediately initiated collection proceedings,
including garnishment, under the existing criminal docket
number. While the garnishment proceedings were pending,

Kollintzas's wife, Joanna, filed for divorce in Indiana state court. The government served her with notice of the garnishments pursuant to the requirements of the Federal Debt Collection Procedures Act ("FDCPA"), and she made a general appearance in the district court. She subsequently filed a brief asserting an interest in the property being garnished; she argued that her interest in the marital assets was a matter for the state court, not the federal court, to decide. The district court disagreed and ultimately concluded Mrs. Kollintzas had failed to establish her property interest under Indiana law. The court granted the government's motion to release the funds for garnishment, and Mrs. Kollintzas appealed. We affirm.

## I.  Background

In November 2004 Frank Kollintzas was convicted by a jury of converting money from the City of East Chicago, Indiana, in violation of 18 U.S.C. § 666(a)(1). Sentencing was scheduled for February 24, 2005, but he did not appear. Chief Judge Robert Miller issued a bench warrant, sentenced Kollintzas in absentia to a term of imprisonment, and ordered him to pay restitution of over $25 million pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. Kollintzas has not been found.

The government quickly initiated efforts to collect a portion of the $25 million Kollintzas owes in restitution. On March 1, 2005, the government filed a Notice of Lien in Lake County, Indiana, where Kollintzas's property is located. The government also initiated garnishment proceedings before Chief Judge Miller pursuant to the FDCPA, 28 U.S.C. §§ 3001-3308, and served interrogatories on third-party account holders ("the garnishee-defendants") to determine the amounts they were holding and to verify the names on the accounts. Based on infor-

mation Kollintzas had provided during the presentence investigation and the garnishee-defendants' interrogatory responses, the government decided to pursue the following assets ("the Assets"), all held in the sole name of Frank Kollintzas unless otherwise indicated:

- Northwestern Mutual Life Insurance tax-deferred annuity with a cash surrender value;

- School of East Chicago retirement package;

- Public Employees Retirement Fund account;

- Wachovia Securities account;

- Peoples Bank checking accounts owned by Frank and Joanna as joint tenants with rights of survivorship;

- Northwestern Mutual Life Insurance policies owned by Frank and with Frank listed as the person with the right to withdraw cash surrender values;

- Nationwide Retirement Solutions account;

- Tech Credit Union savings and checking accounts;

- Indiana Teachers Retirement Fund;

- Funds held by the City of East Chicago as a pension package; and

- Sandridge Bank savings and checking accounts.

On March 31, 2005—while the garnishment proceedings were pending and after the government's liens were perfected—Kollintzas's wife, Joanna, filed for divorce in Indiana state court. The state court issued an ex parte temporary restraining order prohibiting the garnishee-defendants, who had been served with the garnishment notice in Kollintzas's federal criminal case, from transferring any funds from the Assets. The government then

served Mrs. Kollintzas with notice of the garnishment proceedings pursuant to the FDCPA, § 3202(c),[1] so that she could assert any claimed interest in the Assets.

Mrs. Kollintzas made a general appearance in the district court at a status conference, and at that time the court set a briefing schedule to address the government's motion for release of the specified funds for garnishment purposes. Mrs. Kollintzas then filed a brief identifying herself as an "intervenor" and asserting an interest in Frank's property based on the fact that she contributed income to the marriage. She did not, however, specify the amount of her contribution to the Assets, nor did she indicate why she was legally entitled to any of the Assets under state law. Instead, she argued more generally that the Assets were part of the "marital pot" and that it was the "province of the state trial court to determine what interest in marital property is held by Frank Kollintzas and what interest in marital property is held by Joanna Kollintzas."

The district court granted the government's motion to release funds. The court held that the government's liens relating to "all property and rights to property" of Frank Kollintzas were superior to Mrs. Kollintzas's claim to marital property in the divorce proceedings because the liens were perfected before she filed for divorce. Moreover, the court rejected Mrs. Kollintzas's generalized claim

---

[1] 28 U.S.C. § 3202(c) states:

(c) Service. A copy of the notice and a copy of the application for granting a remedy under this subchapter shall be served by counsel for the United States on the judgment debtor against whom such remedy is sought and on each person whom the United States, after diligent inquiry, has reasonable cause to believe has an interest in property to which the remedy is directed.

regarding her contributions to the marriage as insufficient to establish an interest in the Assets. Shortly after granting the government's motion, the district court issued final garnishment disposition orders for the Assets. Mrs. Kollintzas appealed.[2]

## II.  Discussion

### A.  Mrs. Kollintzas's status as an "interested person" under the FDCPA

Throughout these proceedings Mrs. Kollintzas has referred to herself as an "intervenor." This is procedurally incorrect. She never filed a motion to intervene, nor did the district court ever recognize her as an intervening party. The government initiated these FDCPA collection proceedings under the existing docket number in Frank Kollintzas's criminal case, and Mrs. Kollintzas participated in the proceedings through counsel after being served with the garnishment notice. We raised the question of Mrs. Kollintzas's status at oral argument, and after argument ordered supplemental briefing on the following questions: (1) whether intervention by a private party is proper in a criminal case; and (2) whether there is a basis for continuing jurisdiction in the district court to make further rulings in the criminal case.

There is no provision in the *Federal Rules of Criminal Procedure* for intervention by a third party in a criminal proceeding; intervention in civil proceedings is governed

---

[2] After Mrs. Kollintzas filed her notice of appeal, she moved the district court to stay collection with respect to those assets Mrs. Kollintzas claims an interest in. The district court denied her motion but ordered the clerk of court to hold moneys collected in connection with the garnishment proceedings pending resolution of this appeal.

by Rule 24 of the *Federal Rules of Civil Procedure,* which does not apply in a *criminal* case. Mrs. Kollintzas argues that the FDCPA collection proceedings, although technically part of Frank Kollintzas's criminal case, were civil in nature and therefore she could have intervened as of right pursuant to Rule 24. The government sidesteps the question whether intervention is available in FDCPA proceedings initiated in the context of a criminal case; it takes the position that Mrs. Kollintzas is not an intervenor at all but rather an "interested person" entitled to participate in the collection proceedings under the FDCPA in order to assert an interest in the property subject to garnishment.

We need not decide whether intervention is ever appropriate in this situation; as we have noted, Mrs. Kollintzas never sought to be recognized as an intervening party, a step which can only be accomplished by motion. *See* FED. R. CIV. P. 24(c) ("A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5," which "shall be accompanied by a pleading . . . ."). Mrs. Kollintzas's participation in the garnishment proceedings was as a person with an interest in property subject to collection remedies under the FDCPA. That statute is applicable to the enforcement of restitution orders and requires the government to serve notice on "each person whom the United States . . . has reasonable cause to believe has an interest in property to which the remedy is directed." 28 U.S.C. § 3202(c).

It has been established in this and other circuits that district courts may entertain civil garnishment and other collection proceedings as postjudgment remedies within an underlying criminal case; nothing precludes the government from initiating a collection proceeding under an existing criminal docket number in order to collect a fine or restitution ordered as part of the criminal sentence. *United States v. Vitek Supply Corp.*, 151 F.3d 580, 585-86

(7th Cir. 1998) (holding the government may proceed against a corporate defendant's alter egos as a post-judgment remedy in a criminal case in order to collect on restitution obligation of individual and corporate defendants); *United States v. Mays*, 430 F.3d 963, 966 (9th Cir. 2005) (holding FDCPA procedures are available as postjudgment remedies in criminal cases) (*cert. denied*, 126 S. Ct. 1416 (Feb. 21, 2006)); *United States v. Timilty*, 148 F.3d 1, 3 (1st Cir. 1998) (holding the government need not reduce a restitution order to a civil judgment prior to enforcing it; the government may proceed with collection action within a criminal case); *United States v. Thornton*, 672 F.2d 101, 106 (D.C. Cir. 1982) (stating "[i]t is not necessary [for the government] to start a new action, civil or criminal," to proceed with garnishment).

The Ninth Circuit's decision in *Mays* is instructive here. In *Mays*, the district court entered a restitution order against the defendant pursuant to the MVRA. The government then initiated garnishment proceedings pursuant to § 3205 of the FDCPA under the existing criminal docket number. The Ninth Circuit held this scenario was plainly contemplated by the MVRA based on the language of 18 U.S.C. § 3613(a), which specifies the civil remedies available for the satisfaction of fines, and subsection (f) of that statute, which makes the same procedures applicable to the enforcement of orders of restitution. *Mays*, 430 F.3d at 965. More specifically, § 3613(a) provides: "The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." Subsection (f) of § 3613 provides that "all provisions of this section are available to the United States for the enforcement of an order of restitution." The FDCPA is a procedural vehicle available to the United States under federal law for the enforcement of its civil judgments; the Ninth Circuit held that by "importing the

FDCPA's procedures into the MVRA, Congress clearly meant to make those procedures available in criminal cases." *Mays*, 430 F.3d at 966.

Accordingly, the government's initiation of civil garnishment proceedings within the criminal case was procedurally appropriate under the MVRA and the FDCPA, and there is no concern about the district court's jurisdiction. *See Vitek*, 151 F.3d at 586 ("The United States *always* gets to litigate in its own courts. *See* 18 U.S.C. § 3231, 28 U.S.C. § 1345. Any effort to collect a debt due to the United States presents a claim under federal law . . . ."). And because the government specifically invoked the remedial procedures of the FDCPA to collect restitution in this case, Mrs. Kollintzas's participation was not improper, even though she was not a party.

The FDCPA requires the government to use reasonable diligence to identify and serve notice on any person who may have an interest in the property it targets for collection proceedings under the FDCPA. *See* 28 U.S.C. § 3202(c) (requiring the government to serve a "copy of the notice and a copy of the application for granting a remedy under this subchapter" on "each person whom the United States, after diligent inquiry, has reasonable cause to believe has an interest in the property to which the remedy is directed."). The FDCPA also provides that the government may proceed against jointly owned property to the extent permitted by state law. *See* 28 U.S.C. § 3010(a) ("The remedies available to the United States under this chapter may be enforced against property which is co-owned by a debtor and any other person only to the extent allowed by the law of the State where the property is located. . . ."). The FDCPA's third-party notice requirement and the provision regarding jointly owned property together imply that nonparties with an interest in the targeted property may participate in the collection

proceedings for the purpose of asserting their interest in the property.

Thus, we agree with the government that Mrs. Kollintzas's participation in these proceedings was as an "interested person" under the FDCPA and not an intervenor.[3] Because the district court's order granting the government's motion to release the funds for garnishment was a final decision as to her claim to the Assets, we are satisfied that this appeal is properly before us. *United States v. Elliott*, 149 F. App'x 489, 492 (7th Cir. 2005) (holding that preliminary forfeiture order, rather than final forfeiture order, was final because it was conclusive as to defendant's interest in the property "and thus was the final order in the matter as to him"); *United States v. Minneman*, 6 F. App'x 422, 424 (7th Cir. 2001) (holding "disposition order concludes the garnishment proceedings and therefore that order, and not the order denying the debtor's objections, is the final order from which a debtor should appeal"); *Am. Oil Co. v. McMullin*, 433 F.2d 1091, 1096 (10th Cir. 1970) (holding order unrelated to principal lawsuit final and appealable because "if there were no appeal allowed at this time, there may never be a timely appeal"); *see also Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 167 (7th Cir. 1997) (stating for nonparty found in contempt, adjudication in contempt usually *is* the final decision in the case; "there will never be another, more conclusive, order" for the nonparty); *Carter Prods., Inc. v. Eversharp, Inc.*, 360 F.2d 868, 871 (7th Cir. 1966) (holding order denying motion to compel a nonparty witness to answer questions was a final decision because it was final "for all practical purposes").

---

[3] We have revised the caption to reflect Mrs. Kollintzas's status in this case.

## B. Garnishment proceedings

An order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment, *see* 18 U.S.C. § 3613(c), which in this case was on February 24, 2005. The lien is subsequently perfected when a notice of lien is filed, *see* § 3613(d); 26 U.S.C. § 6323(f), which in this case was on March 1, 2005. Liens to pay restitution debts are treated like tax liens, *see* § 3613(c); 26 U.S.C. § 6321 (discussing tax liens), so that they are "effective against every interest in property accorded a taxpayer by state law," *United States v. Denlinger*, 982 F.2d 233, 235 (7th Cir. 1992). "We look initially to state law to determine what rights the taxpayer [or in this case, the criminal defendant] has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58 (1999); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 727 (1985).

In Indiana marital property is held as a tenancy by the entireties, so that each spouse has an undivided interest in the whole, provided title to the property is held by *both* husband and wife.[4] *Denlinger*, 982 F.2d at 236. Indiana

---

[4] In Indiana when property is divided in a divorce action, "[a]ll property owned by either spouse before the marriage, acquired by either spouse in his or her own right after the marriage and before the final separation of the parties, or acquired by the joint effort of the parties is included within the marital estate." *Deckard v. Deckard*, 841 N.E.2d 194, 200 (Ind. Ct. App. 2006) (citing IND. CODE § 31-15-7-4). Indiana courts presume that an equal division of property is just; however, each party has an opportunity to rebut this presumption by showing: the contribution of each spouse to certain property; whether property

(continued...)

law permits a husband to convey property he owns in his own name without the consent of his wife—"an act which extinguishes any right the wife may have in the property by virtue of marriage." *Id.*; IND. CODE § 29-1-2-3.1. Thus, a tax lien can attach to property held in the husband's name when the wife's name is not on the title. *Denlinger*, 982 F.2d at 235.

Federal law determines whether the government's liens attach to the Assets. The primary consideration is "the breadth of control" the taxpayer could exercise over the property. *Drye*, 528 U.S. at 61 (quoting *Morgan v. Comm'r*, 309 U.S. 78, 83 (1940)). For example, the Supreme Court has held the following constitute rights to property: a taxpayer's right under a life insurance policy to compel his insurer to pay him the cash surrender value, *United States v. Bess*, 357 U.S. 51 (1958); a taxpayer's right under state law to withdraw the whole of the proceeds from a joint bank account, *Nat'l Bank of Commerce*, 472 U.S. at 724-25; and a taxpayer's right to receive the entire value of an estate, even if he immediately elects to pass that value on to someone else, *Drye*, 528 U.S. at 61.

In this case, most of the Assets are in Frank Kollintzas's name alone. Only the Peoples Bank checking accounts are held by Frank and Joanna jointly, and because Frank had the right to withdraw all of the money at any time without Joanna's permission, the government's lien attached to the full value of the account. IND. CODE 32-17-11-22(b) ("Any multiple party account may be paid, on request, to any one (1) or more of the parties."); *see Nat'l Bank of Commerce*, 472 U.S. at 724-25.

---

[4] (...continued)
was acquired before the marriage, through inheritance, or as a gift; the conduct of the parties during the marriage related to property; and the economic circumstances of having custody of children. IND. CODE § 31-15-7-5.

After the government's liens attached and after she filed for divorce, Mrs. Kollintzas had an opportunity to establish her claimed interest in the Assets in the garnishment proceedings before the district court. The government conceded in its brief in the district court that "Mrs. Kollintzas may establish ownership of all or part of these account funds in this action by producing evidence that she has made contribution of the funds representing these balances." She did not attempt to do so, however. Instead, she argued that the property sought by the government was marital property and as such it was "the province of the state trial court," not the federal court, to determine the extent of her interest in the Assets.

But the government's liens were perfected and the garnishment proceedings commenced *before* Mrs. Kollintzas filed for divorce; her opportunity to establish her interest in the property sought to be garnished was therefore in the district court. Her claim that she has a presumptive right to half of the marital property in her divorce action under Indiana law is subject to the government's previously perfected liens, which encumber the Assets to the extent they are part of the marital estate. Mrs. Kollintzas asserted a generalized marital property interest in the district court, but made no effort to establish the amounts (if any) she contributed to the various Assets subject to garnishment. Accordingly, the district court properly concluded that Mrs. Kollintzas failed to establish a claim to the Assets superior to that of the government.

AFFIRMED.

No. 06-2034                                                          13

A true Copy:

    Teste:


                      _____

                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*