# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3718

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

PETER G. ROGAN,

*Defendant*.

410 MONTGOMERY, LLC, *et al.*,

*Garnishees*.

DIANE WHITLOW and
ESTATE OF JERRY WHITLOW,

*Claimants-Appellants*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 3310—**John W. Darrah**, *Judge*.

ARGUED APRIL 14, 2011—DECIDED MAY 12, 2011

Before EASTERBROOK, *Chief Judge*, and ROVNER and
SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The United States has a
judgment for more than $60 million against Peter Rogan,

who defrauded the Medicare and Medicaid programs. See *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008). Rogan, who has fled the country, concealed his wealth in an attempt to frustrate his many creditors. See, e.g., *Dexia Crédit Local v. Rogan*, 629 F.3d 612 (7th Cir. 2010). By tracing Rogan's assets, the United States discovered that he had invested in 410 Montgomery LLC, a firm that built housing in Georgia. (Rogan made these investments through foreign trusts, some nominally owned by his relatives. We disregard the trusts and treat Rogan as the investor.)

The United States served 410 Montgomery with a writ of garnishment against Rogan's membership interest in the business venture. See 28 U.S.C. §3205. The company sold its holdings, paid its secured creditors, liquidated, and placed the money in escrow. The district court approved distributions for closing costs. The residue came to a little more than $4 million, and the United States asked for all of it.

Jerry Whitlow and Diane Whitlow filed claims to about $175,000 of the amount on deposit. (Jerry Whitlow has since died, and his estate has been substituted as a party. We refer to Diane Whitlow and the estate as the Whitlows.) The Whitlows say that they own a one-third interest in Taylor Row LLC, to which 410 Montgomery LLC owes about $475,000. The United States opposed the Whitlows' claims, relying on §3205(c)(8), which provides that a writ of garnishment under §3205 "shall have priority over writs which are issued later in time." The Whitlows replied that their entitlement

does not depend on a writ but on Georgia law, which establishes that creditors must be paid before equity investors. Taylor Row is a creditor of 410 Montgomery, while the United States stepped into the shoes of Rogan, an equity investor. (If 410 Montgomery had been a corporation, Rogan would have been a shareholder; because 410 Montgomery was a limited liability company, he held membership units. These are functionally similar to shares of stock.) The district court held that §3205 displaces Georgia law. Because the United States obtained a writ of garnishment, while Taylor Row never obtained a writ of any kind, all of the money belongs to the United States, the court concluded. The disputed funds remain in the escrow pending this appeal.

The Whitlows contend, and the United States concedes, that, if Georgia law governs, any debt to Taylor Row must be paid before funds can be disbursed to 410 Montgomery's equity investors. Normally state law prescribes what the United States can attach or collect as a creditor. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979). The United States contends that §3205 displaces state law once the national government obtains a writ of garnishment. That is not what §3205 says, however. Subsection 3205(c)(8), on which the United States relies, establishes priority among competing writs. If the Whitlows were trying to collect from Rogan's assets, then §3205(c)(8) would give priority to the United States. See *United States v. Kollintzas*, 501 F.3d 796, 802–03 (7th Cir. 2007), which we discuss later. But the Whitlows have not made

a claim against Rogan's assets; their claim is against 410 Montgomery's assets (represented by the funds in escrow).

Subsection 3205(c)(8) does not specify what a writ covers. Does the writ of garnishment give the United States rights directly in 410 Montgomery's assets, or only in Rogan's equity interest in that firm? Although the question is a novel one—no appellate decision discusses it—novelty does not imply difficulty. Section 3205(a) supplies the answer. It reads:

> A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located. A court may issue simultaneous separate writs of garnishment to several garnishees. A writ of garnishment issued under this subsection shall be continuing and shall terminate only as provided in subsection (c)(10).

This tells us two things. First, the writ covers the property "in which the debtor has a substantial nonexempt interest"—which is to say, Rogan's membership units in 410 Montgomery LLC, not the real estate that 410 Montgomery developed. Investors in corporations and LLCs

own tradable shares or units; they do not own the company's assets. The separation of investment interests from operating assets is a fundamental premise of business law. See *Landreth Timber Co. v. Landreth*, 471 U.S. 681 (1985). Equity investors are residual claimants; they get only what is left after debts have been paid. Second, if we were nonetheless to treat 410 Montgomery's assets as property that Rogan "co-owned" with other investors (including the banks and Taylor Row), then the law of the state in which the property is located determines how far the writ of garnishment reaches. That's Georgia law—and the parties agree that a writ under Georgia law would not vault equity investor Rogan (and hence would not promote the United States) over creditors' interests.

An example may help. Suppose Rogan invested $2 million in 410 Montgomery LLC and the Whitlows $2 million; each thus would have 50% of the membership interests, and each would be entitled to 50% of any liquidating distribution. Both interests in this example are equity. Neither Rogan nor the Whitlows could have obtained a judgment or lien against 410 Montgomery's assets; their interest is in the firm, not the assets it owned. The United States gets a judgment against Rogan, garnishes his equity interest, and causes 410 Montgomery to liquidate so that Rogan's stake can be paid over. Let us suppose that the condos sell for $6 million (in other words, that the real estate venture made a $2 million profit). What the United States argues here is that it would receive the entire $6 million and the Whitlows nothing. This is the only possible outcome, the United

States contends, because the Whitlows did not have a writ against 410 Montgomery. But why should the United States be entitled to the Whitlows' half of the business, when §3205(a) says that the writ applies only to Rogan's assets? We should not impute to Congress a plan to confiscate private property without just compensation (or, indeed, any compensation). And if the Whitlows keep their interest when they are equity investors, they assuredly keep it as debt investors (creditors), for debt has higher priority than equity.

The United States relies heavily on *Kollintzas*. Frank Kollintzas was ordered to pay some $25 million in restitution. He absconded, and the United States obtained a lien against some of his assets, such as pension plans, checking accounts, and the cash surrender value of his life insurance policies. See 18 U.S.C. §3613(c). Frank's wife Joanna filed for divorce and made a claim to some of Frank's assets; she contended that the divorce court should determine her share. We held that the right forum is the federal court, which issued the judgment that created the lien, and that the United States had an interest in Frank's assets senior to Joanna's. This decision rested on two conclusions: first, that Joanna was making a claim to some of Frank's assets (rather than, say, to a marital share in jointly owned assets such as a residence); second, that Indiana law would give Joanna's claim a priority date as of the divorce decree, which came after the lien had been perfected. 501 F.3d at 803. *Kollintzas* does not help the United States, because the Whitlows are not claiming any of Rogan's assets. As we have emphasized, what Rogan owned was a mem-

bership interest in 410 Montgomery LLC. The Whitlows don't want any part of that equity interest; their claim is against the LLC's own assets, in which creditors have entitlements senior to those of equity investors.

Our conclusion that §3205 does not seize third-party interests recognized by state law leaves several questions unanswered. Did 410 Montgomery LLC owe a debt to Taylor Row LLC? If so, how much? If it owed money to Taylor Row LLC, why are the Whitlows the right parties to receive that money? Just as Rogan's investment in 410 Montgomery LLC did not give Rogan a property interest in the firm's assets (Rogan owned only his membership interests), so the Whitlows' investment in Taylor Row LLC did not give them an interest in that firm's assets. Georgia law allows investors in limited liability companies, as in corporations, to pursue derivative actions, see Ga. Code §14-11-801; Uniform Limited Liability Company Act §902 (rev. 2006), but the Whitlows have not followed that route. Instead they bypassed Taylor Row and asserted a claim directly against 410 Montgomery. A direct claim would cut out other equity investors in, and creditors of, Taylor Row. The potential to undermine such interests is one reason why investors can't pierce their own firm's structure and assert its rights directly. See *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333 (7th Cir. 1989). Georgia does not appear to permit a suit of this nature; direct actions are proper only with respect to an investor's own rights against the LLC or its other members. *Southwest Health & Wellness, L.L.C. v. Work*, 282 Ga. App. 619, 639 S.E.2d 570 (2006); see also Uniform Limited

Liability Company Act §901. Does some other provision of Georgia law permit the sort of direct claim that the Whitlows have presented? Has the United States forfeited any objection to the direct nature of this claim? These and any other material issues are open on remand.

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.