NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1132n.06

No. 11-6187

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 02, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff – Appellee, | ) ) | |
| v. | ) ) | |
| WILLIAM J. GALLION; SHIRLEY A. CUNNINGHAM, JR.; MELBOURNE MILLS, JR., | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| Defendants, | ) ) | OPINION |
| and | ) ) | |
| ANGELA M. FORD, | ) ) | |
| Appellant. | ) | |

Before: MERRITT, MCKEAGUE, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge. Attorney Angela Ford served as the court-appointed crime victims' representative in a federal criminal prosecution against defendants William J. Gallion, Shirley A. Cunningham, Jr., and Melbourne Mills, Jr. She also represents many of the crime victims in a Kentucky state court civil action that she filed against the same and additional defendants. Ford now appeals from the district court's order requiring her to provide an accounting of funds that she collected by executing on the civil judgment she obtained in state court on behalf of her private

1

clients. Because we conclude that the district court possessed jurisdiction to require the accounting, we AFFIRM.

## I. BACKGROUND

Kentucky attorneys Gallion, Cunningham, and Mills represented more than 420 Kentucky residents who achieved a settlement of more than $200 million from a drug manufacturer to resolve legal claims for heart valve injuries that were allegedly caused by the diet drug, fen-phen. Not satisfied with the millions of dollars in attorney's fees allowed by the retainer agreements, the attorneys allegedly perpetrated a fraud on their clients to divert more of the settlement proceeds to themselves and entities within their control.

In late 2004, more than four hundred members of the fen-phen plaintiff class hired Ford to file a civil action in state court against Gallion, Cunningham, and Mills to recoup the settlement funds that they alleged were fraudulently taken from them ("the *Abbott* lawsuit"). The plaintiffs also named as a defendant the Kentucky Fund for Healthy Living, Inc., a corporation created and operated by the individual defendants to divert $20 million of the settlement funds to themselves. The plaintiffs claimed that the attorneys breached their contractual, fiduciary, and ethical duties by converting the settlement funds to their own use without the plaintiffs' knowledge or consent.

The trial court entered judgment in favor of the *Abbott* plaintiffs for $42 million. Because the defendants did not post a supersedeas bond, Kentucky law permitted Ford to execute on the judgment pending appeal. Ford collected approximately $40.2 million. She distributed most, if not all, of the funds to her clients and paid herself the attorney's fees to which she was entitled under her retainer agreements with her clients.

While the civil action was pending, the Government indicted Gallion, Cunningham, and Mills for violations of federal criminal laws. Under the Crime Victims' Rights Act, 18 U.S.C. § 3771 (CVRA), the district court appointed Ford to serve as the legal representative for all of the crime victims, including those who were not her private clients in the civil action. Ford actively participated in the federal prosecution on behalf of crime victims by filing pleadings and appearing in court.

The first criminal trial resulted in the acquittal of Mills and a mistrial as to Gallion and Cunningham. At the second trial, the jury convicted Gallion and Cunningham. The district court imposed lengthy prison sentences on the two defendants and required them to pay joint and several restitution to their victims in the amount of $127,671,314.63 under the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§ 3663A–3664. The amount of restitution the court imposed represented the additional sum the victims were entitled to receive from the fen-phen settlement without reduction for the attorney's fees Gallion and Cunningham would have earned under their retainer agreements. This court affirmed the convictions and sentences, including the restitution amount. *United States v. Cunningham*, 679 F.3d 355, 384–85 (6th Cir. 2012).

Ford filed a motion asking the district court to appoint her as trustee to manage and disburse restitution funds to the victims. The court denied the motion, ruling that it was the court's duty, assisted by the Government and the probation office, to allocate and disburse restitution funds to victims. Allowing Ford to handle such responsibilities, the court reasoned, would amount to an improper delegation of the court's authority under the MVRA and would raise ethical concerns. As court trustee, Ford would be required to consider the financial condition of the defendants when

3

allocating restitution, while her role as private attorney would demand her allegiance only to her clients. In addition, Ford did not represent all of the crime victims in the civil action.

In February 2011, the Kentucky Court of Appeals reversed the civil judgment Ford had obtained on behalf of her clients. *Cunningham v. Abbott*, Nos. 2007-CA-001971-MR, 2007-CA-001981-MR, 2007-CA-002173-MR, 2007-CA-2174-MR, 2011 WL 336459 (Ky. Ct. App. Feb. 4, 2011). The Kentucky Supreme Court granted discretionary review in December 2011, and the case remains pending in that court.

Upon reversal of the *Abbott* judgment, the Government filed a motion in the criminal case asking the district court to order Ford to provide an accounting of all funds she had collected in the civil action but had not distributed to her clients. The Government argued that, if a Kentucky state court ordered Ford to return the funds she collected to the civil defendants, the Government needed to know the amount and location of the funds collected so that it could formulate a plan to protect the funds as federal restitution owed to the crime victims.

Even before the Government asked for the accounting, Ford provided the Government with detailed spreadsheets showing, for each *Abbott* plaintiff, the gross amount of funds distributed to the client, the amount of attorney's fees the plaintiff paid to Ford pursuant to a retainer agreement, the plaintiff's pro-rata share of litigation and administrative expenses, the amount of any secondary payer claim, and the net distribution. The only information Ford did not provide in response to the Government's request was her personal financial account information showing the location of her attorney's fees.

The district court promptly granted the Government's motion and ordered Ford to disclose the location of any undistributed funds, including her attorney's fees. Represented by counsel, Ford

4

filed an objection to the Government's motion and moved to alter, amend, or vacate the district court's order requiring the accounting. She also asked for a stay of the order pending resolution of her motion to alter or amend.

The district court denied the motion for a stay, but amended its prior order to allow Ford to provide the accounting to the court under seal pending a hearing and final decision on whether the accounting should be provided to the Government. Ford complied with the court's order and filed the accounting under seal *in camera*.

After the hearing, the district court denied Ford's motion to alter or amend. *United States v. Gallion*, No. 2:07-39-DCR, 2011 WL 4015586 (E.D. Ky. Sept. 9, 2011). The court provided a copy of the accounting to the Government. Otherwise, the accounting remains under seal and is not available for general review.[1]

## II. ANALYSIS

Ford contends on appeal that the district court lacked subject matter jurisdiction to order her to provide the accounting. We review this issue *de novo*. *See United States v. Brown*, 639 F.3d 735,737 (6th Cir. 2011); *Baze v. Parker*, 632 F.3d 338, 340–41 (6th Cir. 2011).

As a court of limited jurisdiction, the district court possesses the powers that Congress grants to it. *Baze*, 632 F.3d at 341. The MVRA required the district court to order the criminal defendants

---

[1]Although Ford complied with the district court's order, this appeal nonetheless concerns a live case or controversy. *See Church of Scientology v. United States*, 506 U.S. 9, 15 (1992). If we were to rule in Ford's favor, we have "power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies [of the accounting that] it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot." *Id.* at 13.

5

to pay restitution to their victims in the full amount of the victims' losses. 18 U.S.C. §§ 3663A(a)(1) & 3664(f)(1)(A); *United States v. Elson*, 577 F.3d 713, 733 (6th Cir. 2009). The MVRA also requires the district court to reduce restitution by any amount the victim recovers as compensatory damages for the same loss in a state civil proceeding. 18 U.S.C. § 3664(j)(2)(B); *Elson*, 577 F.3d at 734. Congress intended that crime victims would not obtain multiple recoveries for the same loss. *United States v. Williams*, 612 F.3d 500, 510 (6th Cir. 2010).

The district court conformed its restitution order to these statutory principles. Applying *United States v. Hoglund*, 178 F.3d 410 (6th Cir. 1999), the court mandated restitution to the victims in the amount the victims had expected to receive from the fen-phen settlement, without deduction for the attorney's fees the criminal defendants expected to earn under their retainer agreements. *See Cunningham*, 679 F.3d at 385. The district court also observed that the total amount of restitution imposed included the attorney's fees the victims incurred by hiring Ford to pursue the civil action to recover the diverted settlement funds. Finally, the district court acknowledged that the restitution order must be reduced by any amounts the victims receive as damages as the result of their execution on the *Abbott* civil judgment.

When the state court reversed the *Abbott* judgment, the Government stepped forward to enforce the federal restitution order. Concerned that the civil defendants might obtain a state order requiring Ford to return the collected funds to them, the Government sought information necessary to assert federal control over the collected funds for the benefit of all affected crime victims.

Congress has specifically provided that "[a]n order of restitution may be enforced by the United States in the manner provided in [18 U.S.C. §§ 3571–3574] and [18 U.S.C. §§ 3611–3615]." 18 U.S.C. § 3664(m)(1)(A). Section 3612(c) repeats that the Government "shall be responsible for

6

collection of" unpaid restitution. *See also United States v. Comer*, 93 F.3d 1271, 1281 (6th Cir. 1996). The MVRA does not grant any authority to a crime victims' representative appointed under the CVRA to collect court-imposed restitution. The statute vests the power to collect restitution in the Government, not Ford. *See United States v. Witham*, 648 F.3d 40, 45 (1st Cir. 2011).

The Government may enforce a restitution order "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," 18 U.S.C. §§ 3613(a) & 3664(m)(1)(A)(i), which includes utilization of the Federal Debt Collection Procedures Act (FDCPA). *United States v. Kollintzas*, 501 F.3d 796, 801 (7th Cir. 2007). The Government may enforce the restitution order against all of the defendants' property or property rights, with certain limited exceptions. 18 U.S.C. § 3613(a). Importantly, the statute transforms the restitution order into a lien in favor of the Government on all of the defendants' property and property rights. 18 U.S.C. § 3613(c). Under the MVRA, the Government may enforce a restitution order "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii).

These collection mechanisms, including civil procedures, may be utilized by the Government in federal court in the same criminal case in which the district court ordered the payment of restitution. *See Kollintzas*, 501 F.3d at 801. "[T]here is no concern about the district court's jurisdiction" over such collection procedures, *id.*, because "[t]he United States *always* gets to litigate in its own courts." *United States v. Vitek Supply Corp.*, 151 F.3d 580, 586 (7th Cir. 1998). Title 18 U.S.C. § 3231 and 28 U.S.C. § 1345 grant the district court jurisdiction over restitution enforcement proceedings. *Kollintzas*, 501 F.3d at 801. Therefore, we conclude that the district court had

7

jurisdiction to order Ford to provide an accounting, which is an "available and reasonable means" to enforce the federal restitution order.[2] 18 U.S.C. § 3664(m)(1)(A)(ii).

Ford contends that the Federal Rules of Civil Procedure generally do not permit a judgment creditor to discover the personal assets of a non-party, citing *Burak v. Scott*, 29 F. Supp. 775, 776 (D.D.C. 1939). She also alleges that the Government did not employ a civil judgment collection mechanism, such as a subpoena, to bring her before the court to obtain discovery.

We are not persuaded by these arguments because Ford stood in a unique relationship to the criminal and civil litigation in her dual role as the appointed crime victims' representative and as a private civil lawyer. Her desire to protect her personal financial information and to retain the attorney's fees she earned is certainly understandable. Any issues concerning the Government's ongoing efforts to obtain and/or use Ford's private financial information to collect restitution are not yet ripe for our consideration.

We think it was reasonable, however, for the Government to ask Ford as an officer of the court to provide the requested information. When Ford declined to provide all of the requested information, the Government reasonably resorted to the court's authority to obtain an accounting. *See* 18 U.S.C. § 3664(m)(1)(A)(ii); *Kollintzas*, 501 F.3d at 801. Service of a subpoena on Ford

---

[2]Because the district court's jurisdiction is grounded in §§ 3231 and 1345, we need not consider the Government's argument, raised for the first time on appeal, that the All Writs Act, 28 U.S.C. § 1651, provided the district court with jurisdiction to act. Even if we considered the argument, the All Writs Act does not provide an independent source of jurisdiction, but rather enables courts to issue such commands as may be necessary to effectuate jurisdiction otherwise obtained. *Baze*, 632 F.3d at 345. Further, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

likely would have produced the same information, but under the circumstances, the district court had jurisdiction to order Ford to produce an accounting.

Ford also argues that the funds collected in state court could not revert to Gallion and Cunningham because the *Abbott* judgment still remains in force pending the Kentucky Supreme Court's decision on discretionary review. She further contends that equitable principles preclude the state court from returning the collected money to convicted defendants and that the Supremacy Clause insures the state court could not order the return of money that is part of a federal restitution obligation. These arguments are tangential to the definitive question before us and need not be considered at this time.

### III. CONCLUSION

The district court possessed jurisdiction to order Ford to provide the Government with an accounting of funds collected in the *Abbott* lawsuit. 18 U.S.C. § 3231; 28 U.S.C. § 1345; *Kollintzas*, 501 F.3d at 801. Accordingly, we affirm.

9