# United States Court of Appeals
## For the First Circuit

No. 10-1814

UNITED STATES,

Appellant,

v.

WAYNE WITHAM,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Thompson, Circuit Judges.

Seth R. Aframe, Assistant United States Attorney, John P. Kacavas, United States Attorney, and Michael T. McCormack, Assistant United States Attorney, on brief for appellant.
Wayne Witham, pro se.

June 8, 2011

**LYNCH**, **Chief Judge**.  This case raises a narrow but important question.  In light of the Mandatory Victim Restitution Act of 1996 (MVRA), Pub. L. No. 104-132, §§ 201-211, may the United States meet its obligation to enforce an order of restitution to a private-party victim of a crime by use of the Federal Debt Collection Procedure Act (FDCPA), 28 U.S.C. §§ 3001-3308, including its garnishment procedure, § 3205?

In a decision that predated the applicability of the MVRA, United States v. Bongiorno, 106 F.3d 1027 (1st Cir. 1997), this court held that the government could not use the FDCPA to enforce a private-victim restitution order because such restitution was not a debt "owing to the United States" under the FDCPA.  See 28 U.S.C. §§ 3001(a), (c); 3002(3); Bongiorno, 106 F.3d at 1036-40; see also United States v. Rostoff, 164 F.3d 63, 69 (1st Cir. 1999); United States v. Timilty, 148 F.3d 1, 5 (1st Cir. 1998).

The question not answered in Bongiorno and now before us is whether the MVRA has since given the United States authority to use the FDCPA's collection procedures to enforce restitution orders for the benefit of private victims.  The district court, finding that our prior precedent still controlled the question, held that the United States had no such authority.  We reverse, holding that the MVRA authorizes the United States to invoke FDCPA procedures to

enforce all restitution orders, including those in favor of private-party victims.[1]

## I. Factual Background

The basic facts underlying the narrow legal question we face are not disputed.

On January 26, 2000, appellee Wayne Witham was indicted for his part in a conspiracy that, from 1995 to 1997, stole computer parts and memory from Digital Equipment Corporation and sold them to a co-conspirator's business, which sold used computer systems and components. The conspiracy's three couriers, including Witham, received payment for the stolen goods by check, with the payments split among several checks when the total payment exceeded $10,000, the amount that would trigger financial institutions' reporting requirements under the Bank Secrecy Act. See 31 U.S.C. § 5313(a); 31 C.F.R. 1010.311.

Witham pled guilty on May 23, 2000 to one count of conspiring to defraud the United States and to structure transactions to evade reporting requirements, 18 U.S.C. § 371; one count of conspiring to receive and transport stolen property in interstate commerce, 18 U.S.C. § 371; nine counts of both structuring and aiding and abetting in structuring individual check transactions to evade reporting requirements, 31 U.S.C.

---

[1] We include in the term "victim" persons "other than the victim of the offense" where a court has ordered restitution to such a person under 18 U.S.C. § 3663A(a)(3).

-3-

§ 5324(a)(3); 18 U.S.C. § 2; and two counts of tax evasion stemming from his failure to report his illegal income, 26 U.S.C. § 7201. His plea agreement included a statement that "the Court may also order the defendant to make restitution under 18 U.S.C. § 3663 to victims included in the count(s) to which he agrees to plead guilty." On October 30, 2000, Witham was sentenced to thirty-three months imprisonment, followed by thirty-six months supervised release. He was also ordered to pay, jointly and severally with one co-conspirator, restitution of $800,000 plus 6.241% interest. The restitution was ordered paid to Compaq, which had acquired the victim, Digital Equipment Corporation, in 1998.

Under the terms of an agreement with the probation office, Witham was supposed to pay $200 each month toward his restitution obligation. His first payment was scheduled for January 5, 2004. He "got behind" on those payments, and made only eighteen payments sporadically over the next several years. Further, he made only one of those eighteen payments--of $100 on May 14, 2008--after his supervised release period ended in July 2007.

Witham works seasonally as a contract union millwright for approximately ten months per year, collecting unemployment during the other months. The district court found that he could expect an income ranging between $50,000 and $60,000 a year, though he earned significantly more, $91,000, in 2009. On September 8,

-4-

2009, pursuant to the FDCPA's garnishment procedure, 28 U.S.C. § 3205, the United States filed an application for a writ of continuing garnishment ordering Witham's employer, Seimens Generation Services, to garnish 25% of Witham's disposable (i.e., after-tax) earnings.[2]  The writ was issued by the Clerk of Court the next day.

At a November 30, 2009 hearing on the garnishment, the court reduced the garnishment to $200 per month, pending a deposition of Witham to determine his earnings and expenses, which Witham had not accurately reported to the district court.  After the deposition and a second hearing, the district court ordered on January 28, 2010 that $200 a month continue to be garnished, stating that this amount was "fair, reasonable, and practical" and balanced repaying the victim with the "defendant's rehabilitation, the need for him to be self-sufficient, and his obligations of support" for his adult children.  United States v. Witham, No. 00-CR-17-2, 2010 WL 2465355, at *1 (D.N.H. Jan. 28, 2010).

---

[2]     Under the statute, "[e]arnings" includes wages and salary, 28 U.S.C. § 3002(6), and "'[d]isposable earnings' means that part of earnings remaining after all deductions required by law have been withheld," id. § 3002(5).  The 25% figure is the maximum allowed by the FDCPA, which by its terms authorizes garnishment of "nonexempt disposable earnings," id. § 3205(a), defined as the lesser of "25 percent of disposable earnings," id. § 3002(9), or the excess of weekly disposable earnings over thirty times the Federal minimum hourly wage, 15 U.S.C. § 1673 (codifying section 303 of the Consumer Credit Protection Act, cross-referenced by 28 U.S.C. § 3002(9)).

The United States moved for reconsideration, arguing that the court had misconstrued its discretion under 28 U.S.C. § 3013 in imposing so low a monthly payment toward the restitution obligation.[3] The district court granted the motion for reconsideration, but ordered further briefing on, among other issues, the question of whether First Circuit precedent prohibited the government from using the FDCPA garnishment procedure to collect restitution on behalf of a private party. See Bongiorno, 106 F.3d at 1036-40; see also Rostoff, 164 F.3d at 69; Timilty, 148 F.3d at 5. The government replied that the First Circuit precedents referred to by the district court all interpreted a superseded statutory restitution scheme, and that under the MVRA, the government may use FDCPA procedures to enforce restitution owed to private victims.

On June 4, 2010, the district court vacated its January 28 order of continuing garnishment and held that First Circuit precedent did foreclose the government from invoking the FDCPA to collect restitution owed to a private victim under the MVRA, because by its own terms the FDCPA applies only to debts that are

---

    [3] Section 3013 provides: "The court may at any time on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure" under the FDCPA. 28 U.S.C. § 3013.

"owing to the United States." 28 U.S.C. § 3002(3); United States v. Witham, 757 F. Supp. 2d 91, 92 (D.N.H. June 4, 2010).[4]

The government appeals this order, arguing that under the MVRA, the fact that the FDCPA does not apply on its own terms to restitution owed to private victims is not controlling. The MVRA, it argues, made the authority of the United States to enforce all restitution orders coextensive with its authority to enforce fines, which, no one disputes, includes the authority to invoke FDCPA procedures. Witham argues that the district court was correct to find that prior precedent controlled the outcome of the case, because the FDCPA's definition of "debt" continues to be the dispositive question of statutory interpretation.

## II. Analysis

A.      The Statutory Scheme Has Changed Since Bongiorno

Through a series of enactments from 1982 to 1996, Congress has provided that criminals, in addition to paying fines to the United States as penalties for their crimes, should pay

---

[4] Also on June 4, 2010, the district court ordered Witham to pay $200 per month toward his obligation, subject to adjustment on either his or the government's motion if his economic circumstances changed. United States v. Witham, No. 00-CR-17-2, 2010 WL 2465354, at *1 (D.N.H. June 4, 2010). However, on October 8, 2010, at Witham's request, the district court found that Witham was not then employed and had insufficient funds to support himself. The court suspended the $200 monthly payments, subject to an order that Witham notify the court promptly upon any material change in his economic circumstances that would allow him to begin payments again. United States v. Witham, No. 00-CR-17-2, slip op. at 1-2, (D.N.H. Oct. 8, 2010).

restitution both to the private individuals and institutions victimized by their crimes and to the United States when it is the victim. Each successive enactment has strengthened the procedures for imposing and enforcing restitution orders. The statutory scheme began with the Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, § 5. As relevant to this case, the scheme was amended as part of the broader Sentencing Reform Act of 1984, Pub. L. No. 98-473, title II, ch. II, § 212, to enhance the power of the United States, but not private victims, to use new federal fine collection statutes to collect restitution.[5] Unhappy about the pace of enforcement of restitution orders, Congress enacted the MVRA in 1996, making a number of changes to the restitution scheme. It is the effect of these changes that is in question in this case.

Under the original 1982 VWPA, if a defendant failed to pay restitution ordered by a federal court, either the United States or the victim named in the restitution order could enforce

_____

[5] The amendment authorized the United States, but not private victims, to alternatively enforce restitution orders "in the manner provided for the collection and payment of fines" under a new fine enforcement scheme, codified at 18 U.S.C. § 3613. 18 U.S.C. § 3663(h)(1)(A), repealed by the Mandatory Victim Restitution Act (MVRA), Pub. L. No. 104-132, § 205(a)(2). The 1984 version of § 3613 provided a lien procedure and, as an alternative, language similar to then-§ 3663(h)(1)(B), providing for "execution against the property of the person fined in like manner as judgments in civil cases." Id. § 3613(e), amended by Pub. L. No. 104-132, § 207(c). In 1988 an amendment was made to correct a technical error in the 1984 Act's cross-references to § 3613. See Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7042.

-8-

the order "in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h)(1)(B), (2), repealed by Pub. L. No. 104-132, § 205(a)(2). Judgments in civil actions can be satisfied by following the procedures available under the law of the state in which the court is located, except that "a federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a) (judgment of property); Fed. R. Civ. P. 69(a)(1) (money judgment) (emphasis added); see also Bongiorno, 106 F.3d at 1040 (describing federal government's enforcement options at the time of the case). The 1984 amendment left this enforcement mechanism intact.

The FDCPA, Pub. L. No. 101-647, §§ 3601-3631, was enacted in 1990, eight years after the VWPA. By its terms, the statute provides "civil procedures for the United States . . . to recover judgment on a debt," and "shall not apply with respect to an amount owing that is not a debt." 28 U.S.C. § 3001(a)(1), (c). As relevant to orders of restitution, the statute defines "debt" as "an amount that is owing to the United States." Id. § 3002(3)(B). We have recognized that the FDCPA only extends to "those obligations owing to the federal government." Bongiorno, 106 F.3d at 1036.

In Bongiorno, a case under the Child Support Recovery Act, this court held that "a debt cannot be eligible for inclusion under the FDCPA if the United States is neither the formal owner nor the direct beneficiary of it." Id. at 1037. The FDCPA by its

-9-

own terms did not apply to orders of restitution owing to private victims, and so under the restitution scheme then in effect could not be used by the United States to enforce such orders. Id. at 1039. Bongiorno did not discuss the MVRA, which was inapplicable to that case because the underlying conviction occurred before the MVRA's effective date. See Pub. L. No. 104-132, § 211.

In a separate order denying panel rehearing and rehearing en banc, the Bongiorno court rejected the government's attempt to raise for the first time an entirely new set of arguments about the 1982 VWPA. United States v. Bongiorno, 110 F.3d 132, 133 (denying reh'g and reh'g en banc). In denying panel rehearing, the court emphasized that under Federal Rules of Civil Procedure 64 and 69(a), governing enforcement of civil judgments, the FDCPA "simply is not an 'applicable' federal statute" when restitution is owed to a private victim. Id. at 134. The panel also noted that the legislative history of the VWPA "specifically points to Rule 64" as governing enforcement of restitution orders. Id. The United States could enforce private-victim restitution orders only through the patchwork of state-law procedures for executing judgments, absent some other applicable federal law. See id. No arguments were raised under the 1996 MVRA.

The 1996 MVRA, enacted as Title II of the Antiterrorism and Effective Death Penalty Act of 1996, dramatically changed the statutory restitution scheme by mandating restitution of all

-10-

victims and enhancing collection and enforcement rules. See Pub. L. No. 104-132, §§ 201-211. In addition to making restitution a mandatory part of many federal sentences, id. §§ 202, 204; 18 U.S.C. §§ 3556, 3663A, the MVRA made paying restitution a condition of probation, Pub. L. No. 104-132, § 203; 18 U.S.C. § 3563(a)(6)-(7). The MVRA also replaced the existing statutory procedure in 18 U.S.C. § 3664 for issuing an order of restitution with a much more detailed procedure "for issuance and enforcement of order[s] of restitution." Pub. L. No. 104-132, § 206(a) (emphasis added); 18 U.S.C. § 3664.

Significantly, the MVRA gave high priority to private-victim restitution orders in particular. In allocating any payments received from defendants, the MVRA gave higher priority to payment of "[r]estitution of all victims" than to payment to the United States of fines and costs.[6] Pub. L. No. 104-132, § 207(c)(2); 18 U.S.C. § 3612(c). And where both the United States and a private victim are owed restitution, "the court shall ensure that all other victims receive full restitution before the United States receives any restitution." 18 U.S.C. § 3664(i).

In addition to giving private-victim restitution such high priority, the act also made the United States responsible for

---

[6] The only higher-priority category than restitution is special assessments, 18 U.S.C. § 3612(c)(1), which Congress prioritized because they fund victim assistance programs, see S. Rep. No. 104-179, at 22 (1995).

the collection of unpaid restitution. Pub. L. No. 104-132, § 207(c)(2); 18 U.S.C. § 3612(c) ("The Attorney General shall be responsible for collection of an unpaid fine or restitution . . . ."). This brought restitution into line with the responsibility the United States already had for collecting unpaid fines. This mandate of responsibility is in the same statutory section, 18 U.S.C. § 3612, as an MVRA provision that could only apply to private victims, requiring "each victim to notify the Attorney General" of contact information for restitution purposes. Pub. L. No. 104-132, § 207(c)(2); 18 U.S.C. § 3612(b)(1)(G). This structure makes it clear that private-victim orders are within the responsibility of the United States.

As to enforcement mechanisms, the MVRA repealed 18 U.S.C. § 3663(h), the section which under prior law had invoked the Federal Rules of Civil Procedure by authorizing the United States to enforce restitution orders "in the same manner as a judgment in a civil action." Pub. L. No. 104-132, § 205(a)(2) (striking 18 U.S.C. § 3663(c)-(i)). As a replacement, the MVRA added 18 U.S.C. § 3664(m)(1)(A)(i), which provides, "[a]n order of restitution may be enforced by the United States in the manner provided for" in 18 U.S.C. §§ 3611-3615, which had previously governed imposition and collection of fines, but which the MVRA amended to govern both

fines and restitution.[7]  Pub. L. No. 104-132, § 206(a); 18 U.S.C. § 3664(m)(1)(A)(i).  Next, the MVRA amended 18 U.S.C. § 3613, which governed enforcement of fines, by adding a new subsection (f) expressly making "all provisions" of § 3613 "available to the United States for the enforcement of an order of restitution." Pub. L. No. 104-132, § 207(c)(3); 18 U.S.C. § 3613(f).  Further, the MVRA amended the key fine--and now restitution--enforcement mechanism in § 3613, adding language that "[t]he United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment <u>under Federal law</u> or State law."[8]  Pub. L. No. 104-132, § 207 (c)(3); 18 U.S.C. § 3613(a) (emphasis added).  The procedures for the enforcement of a civil judgment under Federal law include the FDCPA, which had already been available for the enforcement of fines.  <u>See</u> 28 U.S.C. § 3002(3)(B) (listing fines owed to United

---

[7]  The statutory mechanism is as follows: 18 U.S.C. § 3664(m)(1)(A)(i) provides for enforcement "in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title."  Subchapter C of chapter 227 encompasses the statutory sections which govern imposition of fines as part of federal criminal sentences, <u>see</u> 18 U.S.C. §§ 3571-3574, and which in turn provide that "[t]he implementation of a sentence to pay a fine is governed by the provisions of subchapter B of chapter 229," <u>id.</u> § 3574.  Subchapter B of chapter 229 encompasses the statutory sections governing payment and collection of fines and restitution, 18 U.S.C. §§ 3611-3615.

[8]  This language replaced language in the old § 3613(e) that authorized "execution against the property of the person fined in like manner as judgments in civil cases."  18 U.S.C. § 3613(e), <u>repealed by</u> Pub. L. No. 104-132, § 207(c)(3).

States as a debt under the terms of the FDCPA); Timilty, 148 F.3d at 4 n.3 (acknowledging FDCPA may be used to enforce fines).

B.        Our Pre-MVRA Precedents Do Not Control This Case

In all three of our earlier cases, including Bongiorno, that discuss the inapplicability of the FDCPA to private-party orders of restitution, the MVRA did not apply.[9]  The rule in Bongiorno does not control this case precisely because Congress has changed the law.  See United States v. Rodriguez-Pacheco, 475 F.3d 434 (1st Cir. 2007) (stating exception to rule of stare decisis where a panel opinion is "undermined by controlling authority, subsequently announced, such as . . . a statutory overruling") (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995)) (internal quotation mark omitted).

We do not accept the proposition that, even if Bongiorno and its progeny did not directly apply the MVRA, "[t]he substantive

---

[9]     In each case, the defendants were convicted of the crimes underlying the restitution orders before the April 24, 1996 effective date of the MVRA.  See Pub. L. No. 104-132, § 211 (making MVRA amendments applicable to defendants "convicted on or after the date of enactment").  Because "[t]he amended restitution provision applies only to sentencing proceedings where the defendant is convicted on or after April 24, 1996," United States v. Timilty, 148 F.3d 1, 2 n.1 (1st Cir. 1998), in each case we applied the pre-MVRA law in effect at the time of the convictions.  See United States v. Rostoff, 164 F.3d 63, 66 n.3 (1st Cir. 1999) ("Because the Rostoffs were convicted before the effective date of [the MVRA] changes . . . the pre-amendment statute is applicable."); Timilty, 148 F.3d at 2 n.1; United States v. Bongiorno, 110 F.3d 132, 133-34 (1st Cir. 1997) (denying reh'g and reh'g en banc) (discussing VWPA legislative history and 18 U.S.C. § 3663(h), a VWPA provision repealed by the MVRA, as applicable law).

-14-

MVRA provisions upon which the government relies . . . are not new" because the VWPA included "[v]irtually identical provisions," and so the Bongiorno rule was still binding. Witham, 757 F. Supp. 2d at 92. In Bongiorno the question of whether the FDCPA applied by its own terms to private-party restitution orders was dispositive because under the VWPA restitution was enforceable only through regular civil judgment enforcement mechanisms, which under the Federal Rules of Civil Procedure include a federal statute only "to the extent it applies" on its own terms. Fed. R. Civ. P. 64, 69(a). The operative language in the VWPA triggering this reference to only the Federal Rules was repealed by the MVRA and replaced with different language in a different statutory section, § 3613(a), in a manner which fully integrated restitution into the structure for enforcing fines.

C.      Section 3613(a) Authorizes Use of the FDCPA to Enforce Private-Victim Restitution Orders

We begin with the plain language of the MVRA. See Mass. Museum of Contemporary Art Found., Inc. v. Buchel, 593 F.3d 38, 50 (1st Cir. 2010). When the specific sections authorizing enforcement are read alone, the changes enacted by the MVRA are subtle. Section 3613(a) simply provides for enforcement of a fine "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," and §§ 3613(f) and 3664(m)(1)(A)(i) extend this provision to orders

of restitution.  Witham argues that the changes enacted by the MVRA are "immaterial," presumably because the former § 3663(h)(1)(A) also authorized the United States to enforce restitution orders "in the manner provided for the collection and payment of fines" and "in the same manner as a judgment in a civil action."  18 U.S.C. § 3663(h)(1), repealed by Pub. L. No. 104-132, § 205(a)(2).  But we do not read individual sections of statutes in isolation, because "the meaning of statutory language, plain or not, depends on context."  United States v. DiTomasso, 621 F.3d 17, 22 (1st Cir. 2010) (quoting Holloway v. United States, 526 U.S. 1, 7 (1999)) (internal quotation marks omitted).

In that context, Witham's argument fails.  We turn first to the text of the two statutes' enforcement mechanisms.  The MVRA repealed the language referring to the Federal Rules, and replaced it with language authorizing the United States to invoke "the practices and procedures for the enforcement of a civil judgment under Federal law or State law."  18 U.S.C. § 3613(a) (emphasis added); compare § 3663(h)(1) (VWPA enforcement language repealed by Pub. L. No. 104-132, § 205(a)(2)) with § 3613(a), (f) (MVRA enforcement language).  The FDCPA, in turn, is the main source of relevant "practices and procedures . . . under Federal law" which are invoked by the MVRA.  See 28 U.S.C. § 3001(a)(1) (establishing that in general, the FDCPA "provides the exclusive civil procedures for the United States--to recover a judgment on a debt"); id.

-16-

§ 3205 (providing procedure for garnishment); <u>United States</u> v. <u>Phillips</u>, 303 F.3d 548, 551 (5th Cir. 2002) ("The federal law that provides the practices and procedures for the enforcement of a civil judgment is the FDCPA.").

Section 3613(a) as amended by the MVRA, then, incorporates all FDCPA procedures into the authority given to the United States under the fine and restitution enforcement scheme.[10] By this incorporation, § 3613(a) authorizes the United States to enforce fines and restitution orders using the FDCPA. This authorization, unlike the prior scheme, does not depend on whether the FDCPA applies to such orders by its own terms. <u>See</u> § 3613(a).

Considering the text of the entire restitution scheme as amended by the MVRA, we conclude that nothing in the MVRA limits its authorization of the United States to use FDCPA procedures only to restitution orders in favor of the United States, as opposed to private-party victims. The text of the enforcement statute, § 3613, does not distinguish between restitution orders in favor of the United States and orders running in favor of private-party

---

[10] The MVRA identifies the "procedures" available to the United States for enforcing civil judgments and authorizes the United States to use those same procedures as part of the restitution enforcement scheme. <u>See</u> 18 U.S.C. § 3613(a). This authorization is independent of the scope-limiting terms of the FDCPA that would apply absent the independent authorization in the MVRA. <u>See</u> 28 U.S.C. § 3001 (defining scope of FDCPA).

victims.[11]  A different section does distinguish between the two types of restitution, and that supports our reading of § 3613.  In allocating payments received from defendants, the MVRA prioritized "full restitution" of all victims other than the United States "before the United States receives any restitution."  18 U.S.C. § 3664(i).  Here Congress did make a distinction; under established principles of statutory interpretation, its choice not to do so in the enforcement provisions was not inadvertent.  See Jusino Mercado v. Commonwealth of P.R., 214 F.3d 34, 42 (1st Cir. 2000) (where Congress distinguished between two categories elsewhere in the statute, its choice not to do so in another provision was purposeful).  When this priority for private-victim restitution is considered together with the MVRA's mandate that the United States is responsible for collecting restitution generally, Pub. L. No. 104-132, § 207(c)(2); 18 U.S.C. § 3612, it becomes clear that Congress purposefully integrated private-victim restitution orders into the scheme for enforcement by the United States.  These same priority and mandate provisions also make it clear that the full enforcement authority of the United States extends to orders in favor of all victims.

---

[11]  The enforcement language of the VWPA itself did not distinguish between the two types of restitution, either, but the distinction arose in Bongiorno because of the interpretation questions raised by the VWPA's reliance on the enforcement mechanisms available generally in a civil action, as discussed above.  See Bongiorno, 110 F.3d at 133-34; United States v. Bongiorno, 106 F.3d 1027, 1036 (1st Cir. 1997).

In addition, in the MVRA Congress integrated the statutory restitution and fine schemes. The MVRA added subsection (f) to § 3613 making the entire fine enforcement statute applicable to orders of restitution, and the FDCPA has been available to the United States since its enactment to collect fines.[12] See Timilty, 148 F.3d at 4 n.3.

The MVRA's legislative history supports these conclusions about the statutory text and structure. The House and Senate Reports both demonstrate that the bill was primarily focused on restitution to individual victims of crime, with no stated concern for the United States as a victim. See, e.g., S. Rep. No. 104-179, at 23 (1995) (discussing victims' "powerless[ness]" over prosecutor's choices); id. at 17 ("The economic and personal costs of crime to the American people are enormous. . . . [E]ach year 25 percent of U.S. households are victimized by one or more crimes."); H.R. Rep. No. 104-16, at 5 (1995) ("The[] voices [of crime victims] are no longer missing from the national debate concerning criminal

---

[12] In more than twenty other instances the MVRA modified statutory phrases detailing how fines are to be collected and enforced, incorporating orders of restitution into the provisions. For instance, the title of § 3612 was amended from "Collection of unpaid fine" to "Collection of unpaid fine or restitution," and the phrase "or restitution" was inserted into the statutory text after the word "fine" eleven times throughout the text of the section; the phrase "and restitution" was inserted twice. See Pub. L. No. 104-132, § 207(c)(2) (amending 18 U.S.C. § 3612); see also id. § 207(b)-(c) (incorporating references to restitution into 18 U.S.C. §§ 3572, 3611, and 3614). These detailed amendments rendered the authority of the United States to enforce orders of restitution coextensive with its authority to enforce fines.

justice. . . . [H]owever, . . . . [u]nder existing law, crime victims' rights are still too often overlooked."). The Senate Report also describes a clear congressional commitment to "consolidating the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines, while at the same time strengthening these procedures," changes which, by making the fine enforcement statute the centerpiece of restitution enforcement, necessarily shifted to the United States a significant burden for enforcing the private-victim restitution orders with which Congress professed itself so concerned. See S. Rep. No. 104-179, at 12.[13] The prior scheme already allowed the United States to use the FDCPA to collect fines and restitution owed the government; our reading of the MVRA gives effect to Congress's intent to "strengthen" restitution enforcement mechanisms and "consolidate" them with the fine scheme.

We add that the only other circuit court to have squarely faced the question of private-party restitution enforcement under the MVRA has held that the "the plain language of the MVRA" clearly authorizes the United States to use FDCPA practices to recover restitution owed to a private party, largely for the reasons we

---

[13] In addition, Senator John McCain, speaking on behalf of the committee that had considered the bill, explained during debate that "the bill will make procedures for assessing and enforcing criminal debt uniform among the three major categories: mandatory assessments, discretionary fines and restitution which after the passage of this bill will be mandatory." 141 Cong. Rec. S19,281 (daily ed. Dec. 22, 1995) (Statement of Sen. John McCain).

have just explained.[14]  _Phillips_, 303 F.3d at 551.  The Fifth Circuit concluded, as we have, that the reference in § 3613(a) to "Federal law" incorporates the FDCPA's procedures into the restitution scheme, _id._, independent of the definition of "debt" in the FDCPA itself, _id._ at 550.  The court also reasoned that, given the goal of the MVRA to make restitution enforcement more streamlined and effective, it "is absurd to suggest" that the statute would have withheld from the United States "the most effective means for the Government to enforce private victim restitution orders."  _Id._ at 551.  The Fifth Circuit specifically declined to adopt the reasoning of _Bongiorno_ because that case had not interpreted the MVRA.  _Id._ at 550 n.3.

### III. Conclusion

The question raised on this appeal is a narrow one.  We hold only that the MVRA provides the United States with independent authorization to invoke procedures under the FDCPA in order to

---

[14]    Two other circuits have ruled that the FDCPA is generally incorporated into the MVRA's restitution enforcement scheme, but those courts were not presented with the specific question of whether private-victim restitution orders are enforceable by the United States using FDCPA procedures.  _See_ _United States_ v. _Kollintzas_, 501 F.3d 796 (7th Cir. 2007) (holding that the MVRA authorizes use of FDCPA garnishment procedure to enforce restitution order without addressing private party issue); _United States_ v. _Mays_, 430 F.3d 963, 965 (9th Cir. 2005) (noting, in rejecting defendant's claim that the United States must open a new civil matter against him rather than garnish his wages through his old criminal case number, "Although the MVRA is a criminal statute, it expressly, albeit tortuously, provides that the FDCPA's civil enforcement remedies may be used to enforce orders of restitution entered under the MVRA.").

enforce all orders of restitution in criminal cases, including those in favor of private victims.

We vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.